THE DIRECTOR OF THE DEPARTMENT OF AGRICULTURE, Plaintiff-Appellee, *v.* CARROLL FEED SERVICE, INC., Defendant-Appellant.

Second District   No. 79-347

Opinion filed April 15, 1980.

Schwarz & Golden, Ltd., of West Dundee, for appellant.

William J. Scott, Attorney General, of Chicago (George H. Klumpner, Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Carroll Feed Service, Inc. (Carroll), appeals from a judgment entered on the pleadings which permanently enjoined it from operating a grain dealership without a license. Its principal contention is that the bonding provisions of "An Act to License and Regulate Grain Dealers * * *" (Ill. Rev. Stat. 1977, ch. 111, par. 303) (hereinafter the

Act), under which its license was suspended for failure to post a surety bond or its equivalent based on 10% of its gross sales, are unconstitutional on equal protection grounds.

■■ The Director of the Illinois Department of Agriculture (the Director) has contended preliminarily that Carroll has failed to preserve its constitutional claim because of its failure to seek review of the license revocation under the Administrative Review Act. We cannot agree. Since Carroll claims that the statute is invalid in its terms and not merely in its application to it, it was not required to exhaust administrative procedure. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552.) The Director has argued that Carroll was claiming that the *application* of the bonding and inspection requirements of the Act to it was arbitrary and discriminatory, thus, that the *Walker* exception does not excuse Carroll. This view is not supported by the record.

However, we conclude that the bonding provision of the Act is constitutional. The Act requires that a licensed grain dealer file a surety bond or a certificate of deposit as provided in the Act and states that the failure to do so is grounds for suspension of the license. The Act further provides as pertinent:

> "Such bond shall be a principal amount (to the nearest $1,000) equal to 10% of the aggregate dollar amount paid, by the dealer to producers for grain purchased from them during the dealer's last completed fiscal year or in the case of a dealer who has been engaged in business as a grain dealer for less than one year or who has not theretofore engaged in such business, 10% of the estimated aggregate dollar amount to be paid by the dealer to producers for grain purchased from them during the next fiscal year. Such bond shall not be less than $25,000 nor more than $100,000, * * *" Ill. Rev. Stat. 1977, ch. 111, par. 303.

Carroll argues that the upper limit of $100,000 on the required bond amount denies equal protection by favoring large dealers over small ones. It points out that a dealer doing $1,000,000 in sales has to post a 10% bond ($100,000) while a dealer doing $10,000,000 in sales still only has to post the $100,000 bond which would amount to only 1% of its sales. It argues that therefore any dealer doing over $1,000,000 in sales is allowed to post a smaller percentage of his sales as bond and therefore enjoys an unequal advantage over smaller competitors.

■■ Classifications which bear a rational relationship to a legitimate legislative purpose will be upheld. (*S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 77.) A classification is not arbitrary if any state of facts can reasonably be conceived that would sustain it. (*Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 497.) Possible legislative motives which support a reasonable differentiation in classification may be properly

considered. (*McRoberts v. Adams* (1975), 60 Ill. 2d 458, 563.) And it is not necessary that the legislature extend regulation to all cases it might possibly reach. "It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be the clearest." (*McRoberts v. Adams*, at 463-64.) The legislature is not required to make "the unrealistic choice of establishing total and exhaustive regulation or none at all. ° ° ° It may confine its restrictions to those classes where the need is deemed to be the clearest." *Chicago Allis Mfg. Corp. v. Metropolitan Sanitary District* (1972), 52 Ill. 2d 320, 331. o 3 Thus, in *Allis* an ordinance controlling waste discharge applicable only to industrial concerns which discharge more than 3,650,000 gallons of waste per year was upheld over an equal protection attack. The legislature could reasonably have decided similarly in dealing with grain dealers that bankruptcies among small dealers were much more likely than among large ones. It could have reasoned that dealers having over $1,000,000 in annual sales exhibited sufficient financial stability so as not to require an additional bond in an amount over $100,000. The legislature may have decided that at the very least it was rational to first protect against bankruptcies by small dealers, and have considered the fact that a dealer who does a large volume business has indicated some degree of sound management and customer confidence which may or may not have been the case with a smaller dealer. Referencing the amount of the bond to sales volume appears to be a rational approach. Similarly a cutoff of the upper amount of the statutory bond also appears reasonable, since the legislature is free to determine that larger businesses do not need a corresponding percentage of bond protection. In any event the defendant has not met its burden of showing that the classification is clearly and palpably unreasonable.

Carroll has relied principally upon *Cotting v. Godard* (1901), 183 U.S. 79, 46 L. Ed. 92, 22 S. Ct. 30. In *Cotting* a Kansas statute which limited prices to be charged by stockyards doing business over a certain amount did not apply to charges to be made by other similar corporations doing a smaller amount of business. It there appeared that the statute was effectively applicable to only one company in the State, and it was therefore struck down on equal protection grounds since the Supreme Court could not find that the classification bore any rational relationship to any legitimate State purpose. Here, the parties agree that the legitimate State purpose of this statute is to safeguard producers from bankruptcy of grain dealers.

Carroll has also contended that a further section of the Act is unconstitutional. Section 6 of the Act permits the Director to examine or inspect each licensed grain dealer at least annually, allows the Director to inspect the premises, books and records of any grain dealer at any time,

and authorizes the Director to issue subpoenas for any records relating to a grain dealer's business. (Ill. Rev. Stat. 1977, ch. 111, par. 306.) Carroll argues that it properly refused to comply with the subpoena *duces tecum* issued by the Department for the reason that the authorization in the Act is unconstitutional in permitting what it contends is in effect a warrantless search without the allowance to it of proper constitutional safeguards. See *Marshall v. Barlow's Inc.* (1978), 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816, 1820 (but see the exception for a licensed and regulated industry noted at page 1821).

We do not reach the merits of this claim inasmuch as the record shows that the grain dealer's license was revoked because Carroll failed to file the requisite bond and by its own admission was operating without a license at the time of the injunction proceedings. The failure to file the bond, which we have concluded was properly ordered under the statute, is an independent ground for the revocation of Carroll's license without regard to its refusal to obey the Department's subpoena. We therefore need not address Carroll's contention that it properly refused compliance with section 6 of the Act.

We thus conclude that the court did not err in granting plaintiff's motion for judgment on the pleadings. There were no disputed facts, only the question of the constitutionality of the Act and plaintiff was therefore entitled to the relief sought as a matter of law. Section 8 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 309) specifically provides for the injunction which was granted by the trial court. Contrary to Carroll's contention there is no requirement that in that case there be also a showing of irreparable injury or the absence of an adequate remedy at law. See *People ex rel. Carpentier v. Goers* (1960), 20 Ill. 2d 272, 277.

The judgment is affirmed.

Affirmed.

UNVERZAGT and VAN DEUSEN, JJ., concur.