OSCAR GEORGE ELECTRIC COMPANY, Plaintiff-Appellee, *v.* THE
METROPOLITAN FAIR & EXPOSITION AUTHORITY,
Defendant-Appellant.—(HENRY NEWGARD & COMPANY, Defendant.)

First District (5th Division)    Nos. 81-1173, 81-1439 cons.

Opinion filed February 26, 1982.—Rehearing denied April 27, 1982.

Don H. Reuben, William G. Schopf, Jr., Steven A. Weiss, and John A. Krivicich, all of Reuben & Proctor, of Chicago, for appellant.

S. Ira Miller, of Chicago, for appellee.

JUSTICE MEJDA delivered the opinion of the court:

This action was brought by the plaintiff-appellee, Oscar George Electric Company (Oscar George), an unsuccessful bidder, to enjoin an electrical service contract between defendant-appellant, The Metropolitan Fair & Exposition Authority (the Authority), and defendant, Henry Newgard & Company (Newgard), the recipient of the contract awarded pursuant to competitive bidding. A temporary restraining order prohibiting the Authority and Newgard from entering into the contract was entered. The Authority filed a motion to dissolve or stay the order but prior to a ruling thereon, filed notice of appeal therefrom (appeal No. 81-1173). The court thereafter entered a preliminary injunction and denied the motion to dissolve or stay that order. These rulings were appealed (appeal No. 81-1439). The two appeals were consolidated upon motion of the Authority.

The Authority has prosecuted these interlocutory appeals challenging

the issuance of the temporary restraining order and preliminary injunction and the denials of motions to dissolve or stay these orders. The Authority's primary contentions on appeal challenge the standard applied in reviewing the Authority's statutory exercise of discretion, and further challenge the pertinent findings with respect to the necessary prerequisites to the issuance of temporary and preliminary injunctive relief. The Authority also contends that the court abused its discretion in not requiring any bond for the temporary restraining order and in requiring a $70,000 bond for the preliminary injunction.

Essentially, this suit challenges the propriety of the bidding procedure used by the Authority in contracting for electrical services at McCormick Place and Donnelley Hall in Chicago. These facilities accommodate public and private expositions, trade shows, theatrical performances and other events. The Authority purchases electrical services for these events, charging exhibitors a flat fee and thereby making a profit on its charges. Due to steadily declining profits over past years, the Authority in 1980 decided that electrical work should be awarded to the lowest responsible bidder.

Under an interim agreement, U. S. Electric Company (U. S. Electric) was hired to provide temporary electrical work until a contract was awarded and signed. The agreement was memorialized by a letter stating the rates which U. S. Electric would charge. This letter agreement expired on May 31, 1981. At the time of this appeal, electrical services are still being provided under this agreement, which is terminable at will by either party and contains no guarantee of future service.

Meanwhile, the Authority composed a bid package and solicited competitive sealed bids in three daily newspapers of general circulation published in the Chicago area. The ads ran on February 28, 1981, March 1, 1981, and March 2, 1981. Prospective bidders were provided with copies of the advertisement for bids, instructions to bidder (Instructions), a bid form for electrical services (Bid Form), a copy of the proposed electrical services contract and other forms. The bid form requested information concerning the rates that would be charged by the bidder.

A total of 15 contractors submitted bids for the project. All bids were accompanied by a $50,000 bid deposit in the form of certified or cashier's checks.

On March 17, 1981, the bids were opened publicly. The bids were then analyzed by the Authority's accountants, who initially determined that based upon the quoted rates the Authority would pay Commercial $8,304,132, Newgard $8,478,262, and Oscar George $8,587,668 during the contractual period. These calculations indicated that Commercial was the lowest bidder.

Subsequently, the Authority's electrical consultant noted an "irregu-

larity" in Commercial's bid in that the labor component quoted figures significantly below the prevailing union rates. Commercial then revealed that it planned to renegotiate all terms of the contract after a new labor collective bargaining agreement went into effect on June 1, 1981, and that the company had underbid the labor component of the contract in order to be the lowest bidder.

The Authority objected to Commercial's proposed renegotiation of the contract. A financial study of the impact of the three lowest bids was undertaken by the Authority's accountants. The accountants concluded that Commercial would be the lowest bidder if union rates did not increase but since there was an anticipated increase effective June 1, 1981, and since Commercial indicated that it would increase the rates it charged the Authority by an amount greater than other contractors, that then Commercial was no longer the lowest bidder. Instead, the accountants determined that Newgard was the lowest bidder and recommended that Newgard be awarded the contract.

At the regular monthly meeting of the Authority on April 3, 1981, representatives of Commercial were given an opportunity to be heard. A member of the board of directors of the Authority asked if Commercial had tried to pull a "fast one" and a representative replied, "we did."

A motion made and seconded that Commercial be declared the lowest bidder and be awarded the contract was unanimously defeated by the 10 members present. A motion was then made and seconded that the electrical services contract be awarded to Newgard. The motion was adopted by the unanimous vote of all members present. These votes and the board's reasons therefor were written up in the minutes of the meeting and retained on file at the Authority.

Upon rejecting Commercial as the lowest bidder, a motion was made and carried that Commercial's $50,000 bid deposit was to be returned. Thereafter, Commercial's deposit was returned, as were those of the other unsuccessful bidders.

At a meeting on April 17, 1981, the Authority, U. S. Electric and Newgard agreed that the electrical services changeover from U. S. Electric to Newgard was to be completed by June 8, 1981. This date was selected to provide sufficient time for familiarization with electrical systems and to interfere least with the scheduled trade shows. The contract was signed by Newgard on or about May 1, 1981, and by the Authority at the regular monthly meeting on May 8, 1981.

On May 7, 1981, Oscar George filed its verified complaint seeking injunctive relief prohibiting the Authority and Newgard from entering into the contract, a declaration that the bid procedure utilized was void, and an order compelling the Authority to seek the services with a bid form consistent with the intent and prohibitions of the Metropolitan Fair

and Exposition Authority Act (Ill. Rev. Stat. 1979, ch. 85, par. 1221 *et seq.*).

On May 12, 1981, the court entered a temporary restraining order enjoining the Authority and Newgard from doing any act in furtherance of the contract. The order further provided that Oscar George would not be required to post bond, and that a hearing as to the preliminary injunction was set for May 21, 1981. The Authority filed an emergency motion to dissolve or stay this order in the circuit court on May 13, 1981. After a brief hearing on that date, the matter was continued until May 18, 1981, to allow Oscar George adequate time to respond to the Authority's motion. The Authority contends that the order for continuance constituted a "de facto" denial of its emergency motion to dissolve or stay said order.

On May 29, 1981, this court ordered that the temporary restraining order be stayed unless Oscar George posted a bond in the amount of $100,000 by 2 p.m. on June 2, 1981. No such bond was posted.

Then, on June 5, 1981, after hearing evidence, the circuit court entered an order granting Oscar George's motion for a preliminary injunction. Bond, originally set at $50,000, was raised to $70,000. The Authority's request for a further increase was denied.

On June 8, 1981, the Authority's motion to dissolve or stay the preliminary injunction was denied. The Authority filed notice of appeal from the order and the denial of the motion. Upon the authority's motion in this court, we ordered that Oscar George post bond in the total aggregate amount of $200,000. Oscar George has filed a motion to dismiss the Authority's appeal No. 81-1173 relating to the entry of the temporary restraining order, which motion was taken with the case.

Additional allegations and evidence presented in the circuit court are incorporated as necessary into the opinion below.

OPINION

I

The Authority contends that the circuit court abused its discretion in the entry of the temporary restraining order. In its motion to dismiss the appeal, Oscar George argues that the temporary restraining order is not appealable, or alternatively that the appeal had been made moot by the expiration of the restraining order. We need not address the merits of the mootness argument here since we find the temporary restraining order is not reviewable under the facts in this case.

The general rule is that a temporary restraining order is appealable under Supreme Court Rule 307(a)(1) where the defendant brings a motion to vacate or dissolve the order. (73 Ill. 2d R. 307(a)(1); *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1;

*Lester Witte & Co. v. Lundy* (1981), 98 Ill. App. 3d 1100, 425 N.E.2d 1.) In *Bohn Aluminum & Brass Co.* the appealability was predicated in part, however, upon the fact that the defendant had filed a motion to vacate the restraining order and the motion was subsequently denied by the trial court. The supreme court recognized that such procedure was established to prevent appeals from orders entered under circumstances indicating only partial and one-sided consideration. (55 Ill. 2d 177, 184, 303 N.E.2d 1, 5.) Since *Bohn Aluminum & Brass Co.*, it has been repeatedly held that a temporary restraining order is reviewable by way of interlocutory appeal where the defendant files a timely motion to dissolve the order. See, *e.g., Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316; *Bettendorf-Stanford Bakery Equipment Co. v. UAW Local No. 1906* (1977), 49 Ill. App. 3d 20, 363 N.E.2d 867.

In the instant case the Authority filed an emergency motion to stay or dissolve the order in the trial court on May 13, 1981. The hearing on the motion, however, was continued until May 18, 1981, to allow plaintiff adequate time to respond. The Authority appealed the temporary restraining order on May 14, 1981, prior to the hearing on its motion. The Authority's contention that the order continuing the motion constituted a failure to rule, which, in turn, resulted in a *"de facto"* denial of the motion to dissolve or stay is illusory. We do not agree that by continuing the hearing on the motion the circuit court "failed to rule" on the Authority's motion. In any case the failure to rule on a motion is not the equivalent of the denial of the motion. *Veterans Travel Club v. Illinois Commerce Com.* (1973), 15 Ill. App. 3d 116, 303 N.E.2d 142.

■■ Under the circumstances presented here the Authority has not afforded the trial court the opportunity to rule on its motion to dissolve or stay the temporary restraining order. In view of the above, the instant order is not appealable. Thus, we turn to the merits of the Authority's appeal relating to the preliminary injunction.

## II

In support of its contention that the preliminary injunction order should be reversed, the Authority first argues that the court applied an improper standard in reviewing the awarding of the electrical services contract. It is the Authority's initial position that as a public body created by the legislature (see Ill. Rev. Stat. 1979, ch. 85, par. 1221 *et seq.*), it is empowered by its enabling legislation to exercise discretion in awarding contracts in response to bidding, and specifically to determine which bidder is the lowest responsible bidder. (Ill. Rev. Stat. 1979, ch. 85, par. 1244.) The Authority further argues that where its board of directors has exercised such discretion to ascertain the lowest responsible bidder, the presumption obtains that the action of such board was regular and lawful,

and that such presumption can only be overcome by proof of fraud or lack of jurisdiction. (See, *e.g., Hallet v. City of Elgin* (1912), 254 Ill. 343, 98 N.E. 530; *John N. Brunsfeld & Sons, Inc. v. Board of Education* (1977), 54 Ill. App. 3d 119, 369 N.E.2d 283.) The Authority concludes that because Oscar George failed to allege or prove either of these elements, the court was precluded from entering the instant preliminary injunction.

Section 24 of the Metropolitan Fair and Exposition Authority Act provides that contracts awarded pursuant to bidding shall be "let to the lowest responsible bidder," and that "[i]n determining the responsibility of any bidder, the Board may take into account past record of dealings with the bidder, experience, adequacy of equipment, ability to complete performance within the time set, and *other factors besides financial responsibility* * * *.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 85, par. 1244.

In *People v. Omen* (1919), 290 Ill. 59, 124 N.E. 860, our supreme court stated:

"It has been repeatedly held by this court that the statutory requirement that contracts for public improvements shall be let to the lowest responsible bidder does not require the letting of a contract to the lowest bidder upon the ascertainment of his financial responsibility, only; that the term 'responsible' includes the ability to respond by the discharge of the contractor's obligation in accordance with what may be expected or demanded under the terms of the contract, and that when the municipal authorities have exercised their discretion in the award of a contract for a public improvement the presumption obtains that the action of such authorities was regular and lawful, and the courts will not interfere, in the absence of fraud, with the exercise of official discretion by the municipal authorities in awarding such contract. (*Hallett v. City of Elgin* [1912], 254 Ill. 343, [98 N.E. 530] * * *.)" 290 Ill. 59, 67, 124 N.E. 860, 864; see *John N. Brunsfeld & Sons, Inc. v. Board of Education* (1977), 54 Ill. App. 3d 119, 369 N.E.2d 283.

Our supreme court also recently reiterated that in determining the lowest responsible bidder, financial responsibility and the ability to perform the contract were not the only relevant factors, and the fact that a contractor submits the lowest bid will not automatically require that the contract be awarded to that contractor. (*S. N. Nielsen Co. v. Public Building Com.* (1980), 81 Ill. 2d 290, 410 N.E.2d 40.) It was there held that a bidding contractor's failure to conform to the public commission's affirmative action plan could be taken into account in determining whether he was the lowest responsible bidder within the meaning of the Public Building Commission Act (Ill. Rev. Stat. 1979, ch. 85, par. 1031 *et seq.*).

■■ We recognize that under the above principles the term "responsible bidder" is incapable of any exact definition. From the foregoing statute and authorities it is obvious, however, that an exercise of discretion is an essential and necessary element of a board's determination of "responsibility" of bidders, and that an exercise of such discretion will be presumed to be regular and valid. In its verified complaint for injunctive relief Oscar George alleges neither fraud nor lack of jurisdiction to overcome this presumption. We find that under the above principles the granting of injunctive relief premised strictly upon the Authority's determination that Newgard was the lowest responsible bidder would be error. Our conclusion here does not, however, dispose of the instant preliminary injunction for reasons which appear below.

Next, we briefly address the merits of the Authority's contention that the court erroneously substituted its own judgment for that of the Board in entering the instant preliminary injunction. The Authority contends that the basis of the decision was the court's belief that the Board should have awarded the contract to Commercial because it was the lowest bidder, then refused to renegotiate the terms, and sued if Commercial failed to perform its contract. The Authority's position is that the ruling substitutes the court's opinion of how the Board should have awarded the contract for the Board's statutorily granted discretion. Ill. Rev. Stat. 1979, ch. 85, par. 1244.

We have carefully examined the record of proceedings and find ample support for the Authority's position. The record reveals that the court found the Board's action in not holding Commercial to the contract to be a "usurpation of their statutory duties." We think it is sufficient to note that such a finding simply is not consistent with the *Hallett* standard previously discussed.

Although we agree that the *Hallett* standard must be applied to a review of the Board's actions in selecting the lowest responsible bidder, we find that Oscar George's suit for injunctive relief is not entirely disposed of by such general limitations applicable to suits attacking the awarding of contracts pursuant to public bidding. Here we note that under section 25 of the Metropolitan Fair and Exposition Authority Act (Ill. Rev. Stat. 1979, ch. 85, par. 1245), any bidder submitting a bid in compliance with the requirements for bidding may bring suit in equity to compel compliance with the Act's provisions relating to the awarding of contracts by the Board. (Ill. Rev. Stat. 1979, ch. 85, pars. 1244, 1245.) Thus, any alleged irregularity in the bidding procedure may support an action in equity within the contemplation of the statute.

■■ In its complaint Oscar George alleges as grounds for injunctive relief that (1) the bid forms were ambiguous in that they failed to specify the amount of material and equipment a contractor will provide to the

Authority, and (2) the Authority improperly returned Commercial's $50,000 bid deposit in contravention to its published bid instructions. Accordingly, we view this as an action brought pursuant to section 25, focusing upon the correctness of the bidding procedure used by the Authority. Although the *Hallett* standard presumes that a board's exercise of discretion is legal and proper, we here find no such presumption regarding its compliance with the procedures mandated under the instant statute. Therefore, we reject the Authority's conclusion that the order granting the preliminary injunction must be reversed due to Oscar George's failure to plead or prove fraud or for lack of jurisdiction.

## III

Next, we are asked to determine whether the evidence adduced supports the instant preliminary injunction under traditional equitable principles. The Authority argues that it was incumbent upon Oscar George to plead and prove, *inter alia*, facts showing irreparable injury and lack of an adequate remedy at law as a basis for the issuance of a preliminary injunction. (*McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 364 N.E.2d 420.) Oscar George contends that under section 25 of the Metropolitan Fair and Exposition Authority Act (Ill. Rev. Stat. 1979, ch. 85, par. 1245) injunctive relief is an appropriate remedy to enforce compliance with the Act regardless of general equitable principles. The Authority's position is that this section merely grants Oscar George standing to sue in equity but does not obviate the necessity of proving general equitable elements for injunctive relief.

■■ Under general principles of equity, for preliminary injunctive relief it must be established, by the party seeking the injunction, that he has no adequate remedy at law and that he will be irreparably injured if the injunction is not granted. (*Illinois Housing Development Authority v. Arbor Trails Development* (1980), 84 Ill. App. 3d 97, 404 N.E.2d 1097.) However, no such showings are necessary where a statute authorizes injunctive relief to enforce compliance with provisions of a statute. (See generally *People ex rel. Carpentier v. Goers* (1960), 20 Ill. 2d 272, 170 N.E.2d 159; *People v. Keeven* (1979), 68 Ill. App. 3d 91, 385 N.E.2d 804; *Director of the Illinois Department of Agriculture v. Carroll Feed Service, Inc.* (1980), 83 Ill. App. 3d 164, 403 N.E.2d 762.) Oscar George has brought the instant suit pursuant to the statutory authorization in section 25. Accordingly, where Oscar George has alleged and shown that there has been a violation of the statute by the Authority, and that it has standing as a bidder to bring the action, there is no necessity to prove irreparable harm or the absence of an adequate remedy at law. See *People v. Keeven.*

We are mindful, however, that a preliminary injunction is an extra-

ordinary remedy to be issued only with the utmost care. (*Scott & Fetzer Co. v. Khan* (1979), 74 Ill. App. 3d 400, 393 N.E.2d 102.) Accordingly, the foregoing exception to the general principles governing the granting of preliminary injunctive relief does not, in our opinion, obviate the well-known and long-established requirements that the party seeking the preliminary injunction must establish three remaining issues: (1) that the threatened injury to it will be immediate, certain and great if the injunction is denied while loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted; (2) that the requesting party has a reasonable likelihood of prevailing on the merits of the case; and (3) that granting the preliminary injunction will not have an injurious effect upon the general public. (See generally *Illinois Housing Development Authority v. Arbor Trails Development* (1980), 84 Ill. App. 3d 97, 404 N.E.2d 1097.) We find that section 25 does not require the dislocation of these traditional equitable principles with respect to the issuance of preliminary injunctive relief.

■■ The Authority argues, *inter alia*, that the trial court must be reversed where Oscar George has failed to show a reasonable likelihood of prevailing on the merits. (*Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B* (1976), 63 Ill. 2d 514, 349 N.E.2d 36.) We note that likelihood of success on the merits does not require a showing which is sufficient to warrant relief after a final hearing. The party seeking the preliminary injunction, however, must establish to the satisfaction of the trial court that he will probably be entitled to the relief requested if the proof should sustain his allegations. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) The issuance or denial of a preliminary injunction is addressed to the trial court's sound discretion and its findings will not be disturbed unless they are against the manifest weight of the evidence. (*Illinois Housing Development Authority v. Arbor Trails Development.*) On appeal, the reviewing court should confine itself to determination of whether the trial court has properly exercised its broad discretionary powers and each substantive issue should be considered only insofar as necessary to determine whether there has been an abuse of discretion. (*Illinois Housing Development Authority v. Arbor Trails Development.*) Accordingly, we must determine whether, on the basis of the evidence at the hearing on Oscar George's motion, the trial court abused its discretion in entering the preliminary injunction order; considering substantive issues only insofar as necessary to determine whether there has been an abuse of the trial court's discretion.

With this caveat in mind, we have examined the record of proceedings below. As previously noted, the only two allegations raised by Oscar George in its complaint challenging the Authority's compliance with the

mandated bidding process are that: (1) the Authority improperly returned Commercial's $50,000 bid deposit in contravention to its published bid instructions and bid forms, and (2) the bid form was ambiguous in that section 2.01 does not specify the amount of material and equipment which the contractor will provide to the Authority.

■■ Oscar George's first contention that the $50,000 bid deposit was improperly returned to Commercial is premised upon its allegation that Commercial, as the lowest bidder, refused to enter into the proposed contract after its bid had been accepted. We believe that the evidence presented manifestly contraverts the underlying premise. First, the instructions to bidders required a $50,000 bid deposit which could be retained by the Authority "under the conditions stipulated in the bid." Section 3.01 of the bid form permitted the Authority to retain the bid deposit only if (a) the bidder withdrew his bid after opening but prior to the signing of the contract, or (b) upon written notification of the award of the contract to him the bidder refused to enter into the contract. From our examination of the record, it is undisputed that neither of these conditions occurred. Moreover, Oscar George's counsel, who was called as a witness by the Authority, testified that Commercial "never refused to enter into the contract."

Secondly, in its findings, the court stated that "the Authority used incomprehensible excuses to release Commercial from their legal responsibility and release the fifty thousand dollar bid deposit." This finding is simply not supported by the evidence and in our opinion appears palpably erroneous.

Next, the Authority argues that Oscar George has failed to show a likelihood of proving its allegation that the materials and equipment clause of the bid form "failed to describe with particularity the precise amount of materials to be supplied by the contractor." We note that in addition to alleging that the "material and equipment" paragraph of the bid form was inadequate, Oscar George's president testified that the bid documents were also vague because they did not state the number of hours that would be worked under the contract. This latter contention was not alleged in Oscar George's complaint.

Section 2.01(f) of the bid form provides that "[i]n general, all material and equipment shall be furnished to Contractor by the Authority * * * Should it become necessary for Contractor to purchase any additional material or equipment, he shall do so only after written approval by the Authority." The section of the Act governing advertisement for bids states that the advertisements "shall describe the character of the proposed contract in sufficient detail to fully advise prospective bidders of their obligations and to insure free and open competitive bidding." Ill. Rev. Stat. 1979, ch. 85, par. 1245.

At the hearing on plaintiff's motion for preliminary injunction, the following evidence was adduced in addition to the facts set out above. The general manager of McCormick Place testified that no precise estimate of hours was possible but that historical hours for shows held in previous years and a schedule of future shows were available to bidders upon request. Oscar George's president testified that the quantity of hours was not important to him at the time and that Oscar George never asked for an explanation of the hours term.

Regarding the material and equipment clause, the general manager of McCormick Place testified that the Authority provides all of its own materials and that this clause was inserted to provide for emergencies such as weekends and holidays when the contractor might have to provide incidental materials. Further exhibits adduced at the hearing showed that the Authority's accountants evaluated the bids based only upon the labor component of the proposal rather than materials, and that the Authority has supplied all necessary materials during the previous two fiscal years and had planned to do so in the future. This testimony was uncontroverted. Oscar George's president testified that the passage was unclear to him but that he never asked for an interpretation of the "materials and equipment" paragraph.

We have carefully considered the evidence presented. In view of the bidding requirements expressed in section 25, Oscar George has not sustained its burden of demonstrating that it will probably be entitled to the relief requested in its complaint. Section 25 mandates that advertisements for bids must describe the character of a proposed contract in sufficient detail so as to accomplish two useful purposes: (1) to advise prospective bidders of their obligations under the contract; and (2) to insure free and competitive bidding. (Ill. Rev. Stat. 1979, ch. 85, par. 1245.) In our view the evidence presented clearly failed to establish that the instant bid advertisement did not conform to these requirements.

■■ The instant contract was in the nature of a requirement contract, and in view of the evidence, it is doubtful if the hours term could ever have been computed with exact precision. Moreover, Oscar George has not demonstrated that the material and equipment clause failed to conform in any material respect to the degree of specificity mandated by the bidding statute. The clause plainly states that "all material and equipment shall be furnished to the Contractor by the Authority." We cannot conclude upon the evidence here that because the above general provision is modified to provide procedures whereby the contractor may purchase necessary additional material or equipment at the stipulated profit, the clause fails to meet the mandate of section 25. In this court's opinion the pleadings and proofs in this case are inadequate to demonstrate that Oscar George

will succeed on the merits and therefore that a preliminary injunction is warranted.

In so ruling we acknowledge the general aversion to the granting of preliminary injunctive relief recognized by our courts, particularly in situations where granting such relief would be to give the relief that could only be obtained after a final hearing on the merits of the dispute. (*P.S.L. Realty Co. v. Granite Investment Co.* (1976), 42 Ill. App. 3d 697, 356 N.E.2d 605.) The disposition of the appeal in this manner renders it unnecessary to consider the Authority's remaining contentions regarding the preliminary injunction or to address the Authority's contention regarding the bond. However, we expressly intend no opinion as to the merits of any further proceedings not inconsistent with the views herein stated.

For the foregoing reasons, we dismiss the appeal from the temporary restraining order and reverse the order granting preliminary injunction.

Appeal No. 81-1173 dismissed; appeal No. 81-1439 reversed.

McNAMARA and WILSON, JJ., concur.