THE BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL DISTRICT NO. 219 *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF EDUCATION OF NORTHFIELD TOWNSHIP HIGH SCHOOL DISTRICT NO. 225, Defendant-Appellee.

First District (5th Division) No. 82—2145

Opinion filed January 28, 1983.

R. Theodore Clark, Jr., and Fay Hartog-Rapp, both of Seyfarth, Shaw, Fairweather & Geraldson, and Russell M. Pelton and Craig A. Varga, both of Peterson, Ross, Schloerb & Seidel, both of Chicago, for appellants.

Allyn J. Franke and George E. Riseborough, both of Brydges, Riseborough, Morris, Franke and Miller, of Chicago, for appellee.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

During the pendency of administrative proceedings before the Regional Board of School Trustees of Cook County, Illinois ("Regional Board"), regarding a petition filed pursuant to the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 7—1) requesting that certain property be detached from Niles Township High School District No. 219, Cook County, Illinois, and attached to Northfield Township High School District No. 225, Cook County, Illinois, the Board of Education of District No. 225 ("defendant") unilaterally adopted and executed a policy to accept students residing in the detachment area with the expressed intent to waive all tuition retroactive to the beginning of the 1982-83 school year if the detachment petition should be granted. In response to defendant's policy, the Board of Education of District No. 219 and Wesley F. Gibbs[1] ("plaintiff board" and "plaintiff taxpayer," respec-

---

[1]Defendant argues that plaintiff taxpayer has no standing to maintain this action because of an inherent conflict of interest resulting from his dual status as a taxpayer residing in District No. 225 and as Superintendent of District No. 219. Because this issue was not ruled upon by the trial court, it is not properly before this court and will not be addressed in this opinion. *In re Marriage of Weiss* (1980), 87 Ill. App. 3d 643, 650, 409 N.E.2d 329.

tively, in the singular, or "plaintiffs," collectively) filed a complaint requesting that a temporary restraining order, preliminary and permanent injunction be issued restraining defendant from carrying out said policy. Concurrently, parents of the detachment area students filed a petition to intervene in future proceedings. The court denied the temporary restraining order and the petition, but allowed petitioners five days within which to file an amended petition. Later that day, plaintiffs filed a notice of appeal. The following day, petitioners filed an amended petition and the trial court granted leave to intervene. As a result, plaintiffs filed an amended notice of appeal which incorporated the intervention issue. On appeal, plaintiffs present the following issues for review: (1) whether the trial court erred in denying plaintiffs' motion for temporary restraining order and preliminary injunction; (2) whether intervenors are properly before the appellate court: (3) whether a school board has the authority to waive tuition for nonresident students; (4) whether the tender of nonnegotiable checks constitutes payment of tuition in accordance with the School Code; and (5) whether a school board has authority to accept in attendance students in a proposed detachment area during the pendency of administrative detachment proceedings. For the reasons that follow, we affirm.

In June 1982, pursuant to the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 7—1), residents of District 219 filed a petition with the Regional Board to detach certain territory from District 219 and attach it to District 225. On August 16, 1982, the Regional Board convened to hear the merits of the petition. After a preliminary discussion, the hearing was continued to October 4, 1982. On the day of the Regional Board's meeting, defendant also met in open session and adopted a policy to accept students residing in the proposed detachment area for the 1982-83 school year. Said policy stated that each student must deposit a check or other equivalent security equal to a year's tuition (approximately $3,700) which would be held in escrow by defendant. Defendant further decided that should the Regional Board grant detachment during the school year, residency of the detachment area students would be retroactive to the beginning of the school year and all tuition checks would be returned. The record reveals that the parents of five detachment area students deposited checks in the amount of $1,800 each (one-half of the year's tuition), post-dated January 3, 1983.

On August 30, 1982, the day classes convened in both District 219 and District 225, plaintiffs filed their verified complaint and motion for a temporary restraining order, preliminary and permanent injunction to restrain defendant from accepting nonresident students during

pendency of administrative detachment proceedings. Plaintiffs alleged that defendant's unilateral policy would irreparably harm plaintiffs because such action is illegal, contrary to law and constitutes the payment of public funds for a purpose unauthorized by law. In addition, plaintiff board alleged that it would suffer further irreparable harm by: (1) the loss of State aid which is based upon the number of students in actual daily attendance; and (2) the indirect influence defendant's action will have on the Regional Board's detachment decision. Lastly, plaintiffs alleged that they had no adequate remedy at law.

On August 31, 1982, a hearing was held on plaintiffs' motion at which time defendant filed its answer as well as a motion to dismiss. The trial court correctly stated that once defendant filed its answer, it was precluded from filing a motion to dismiss, and, thus, denied the latter. Attorneys for the students residing in the detachment area also appeared that day in an attempt to intervene in the proceedings. Plaintiffs objected to the petition to intervene on the ground that it contained no legal authority. In their defense, petitioners stated that they had just heard about the pending suit that morning and had not had adequate time within which to prepare the petition. They then requested additional time within which to file an amended petition to intervene. After hearing further arguments, the trial court denied plaintiffs' motion for a temporary restraining order on the ground that plaintiffs had not established irreparable harm. The trial court also denied petitioners' leave to intervene, without prejudice, granting them five days within which to file an amended petition. Later that day, plaintiffs filed a notice of appeal.

The following day, the parties appeared in court on petitioners' amended petition to intervene and their motion to dismiss. Plaintiffs argued that the petitioners had already been precluded from participating in the proceeding:

> "If your order yesterday [denial of a temporary restraining order] was immediately appealable, and they were denied leave to intervene yesterday, then the order of yesterday in which they were not intervenors, is the one which we are appealing, so their intervention goes to the complaint for permanent injunction which I assume you are taking in another procedure."

The trial court, however, indicated that it intended to grant the petition to intervene and asked plaintiffs how much time they needed to file their answer. Instead of responding directly to the question, plaintiffs focused on the trial court's intention that plaintiffs had an immediate right to appeal the previous day's order. In that regard, plaintiffs argued that the order had to be modified to include denial of a

preliminary and permanent injunction. When the trial court agreed to modify the order, petitioners stated that they had to have an immediate ruling on their right to intervene or they would be "sandbagged out of the proceeding before the Appellate Court." In response, plaintiffs argued against an immediate ruling and stated that they needed two weeks within which to respond to the petition. Expressing disapproval of plaintiffs' obvious efforts to procedurally block the students' intervention in future proceedings, the trial court stated:

"THE COURT: No, no. If you are going to appeal immediately, which is your right, by giving two weeks I am barring [petitioner] from participating.

PLAINTIFF: I believe he is barred anyway.

THE COURT: You will have to get that ruling from the Appellate Court, you are not going to get it from me. I don't agree with that.

PLAINTIFF: Your Honor—

THE COURT: I will give you 24 hours, Counsel, to answer this and I will rule on it Friday morning at 10:30.

PLAINTIFF: On which?

THE COURT: The petition to intervene.

PLAINTIFF: Can we get a modified order?

THE COURT: I have no objection.

INTERVENOR: Can we have that put over to Friday?

PLAINTIFF: This is an emergency from our point of view, and by precluding us from taking it up on an emergency basis from your order yesterday, putting it over to Friday.

THE COURT: You want on the one hand for me to stop you and on the other to move you. That is not fair, I am not going to stand for it.

I will deny it, I will amend your order right now, if that is what you want. I will give you leave to intervene right now without any answer. That solves all your problems.

PLAINTIFF: Without an opportunity to respond?

THE COURT: That's right; if you want it done immediately, I will do it but he gets the same consideration you get, that you need your order immediately, and I will allow him to file immediately. If you want to wait until Friday, I will

rule on Friday.

PLAINTIFF: Even though this is a modification of yesterday's order?

THE COURT: You heard what I said. How do you want it?

PLAINTIFF: I would like your order to correctly reflect yesterday's order.

THE COURT: Have you seen the order?

INTERVENOR: No.

PLAINTIFF: We have discussed it on the phone.

THE COURT: Look at the order. I will take up whatever objections you want and we will add to that order your leave to intervene is granted."

Upon review of the order, plaintiffs requested that the order state that intervenors had the right to participate in all proceedings, including any appeal, "from this day forward." In support of their position, plaintiffs stated:

"It would be our position that you don't have jurisdiction to retroactively grant the petition that yesterday you denied it, today you granted it, and today they have all rights, and it is your intention they should have all rights from this day forward, which is why you granted their petition over our objection for not having had a chance to adequately respond."

Nevertheless, the trial court signed the order without the phrase "from this day forward" incorporated therein. Subsequently, plaintiffs filed an amended notice of appeal.

OPINION

The first issue to be considered is whether the trial court erred in denying plaintiffs' motion for a temporary restraining order, preliminary and permanent injunction.

■ Under general principles of equity the party seeking preliminary injunctive relief must establish: (1) that he will be irreparably injured if the injunction is not granted; and (2) that he has no adequate remedy at law. (*Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 965, 433 N.E.2d 958.) Irreparable injury does not mean that the harm inflicted is beyond the possibility of repair or beyond compensation in damages or even that the injury is great. Rather, it denotes transgressions of a continuing nature, of such constant and frequent recurrence that redress cannot be had at law. (*Sports Unlimited, Inc. v. Scotch & Sirloin of Woodfield, Inc.* (1978), 58 Ill. App. 3d 579, 583, 374 N.E.2d 916.) Furthermore, for there to be an adequate remedy at law which

will deprive equity of its power to grant injunctive relief, the remedy must be concise, complete, and provide the same practical and efficient resolution as the equitable remedy would provide. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223.) When the issuance or denial of a preliminary injunction is appealed, the appellate court considers each substantive issue only insofar as is necessary to determine whether there has been an abuse of discretion (*Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 966, 433 N.E.2d 958), and whether the facts state with particularity the right to such an extraordinary remedy. (*Mingare v. DeVito* (1978), 67 Ill. App. 3d 371, 373, 385 N.E.2d 20.) The trial court's findings will not be disturbed unless they are against the manifest weight of the evidence. *Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 966, 433 N.E.2d 958.

In the pending case, plaintiffs argue that injunctive relief should have issued because: (1) the trial court was limited to the verified pleadings, *i.e.*, the complaint and answer, which presented no material issues of fact; (2) plaintiffs will be irreparably harmed because defendant's action is illegal, contrary to law, and constitutes the payment of public funds; (3) State aid will be diminished and the Regional Board will be prejudiced against them; and (4) they have no adequate remedy at law. Defendant, on the other hand, maintains that this court is not limited to the verified pleadings, but, instead, has access to anything upon which the lower court relied in making its decision. In the alternative, defendant states that even if this court were limited to the pleadings as plaintiffs suggest, the trial court's decision would still stand because plaintiffs did not establish the requisite elements for injunctive relief.

■ Our analysis of the question of injunctive relief need go no further than the pleadings. Thus, the question of which documents are properly before this court is irrelevant. Generally, we find plaintiffs' allegations of irreparable harm to be either conclusory, speculative or of such infrequent a nature that redress could efficiently be had at law. Specifically, plaintiffs' allegation that they will be harmed because defendant's actions are illegal is nothing more than an ineffectual conclusion of law. While it is true that injunctive relief will lie to control the discretionary actions of public officials if fraud, corruption, oppression or gross injustice is shown (*Rocke v. County of Cook* (1978), 60 Ill. App. 3d 874, 875, 377 N.E.2d 287), a mere allegation of illegality such as plaintiffs' does not rise to the level of necessary demonstrative proof. Second, plaintiffs' allegation that defendant's pol-

icy will prejudice the Regional Board is pure speculation and conjecture. As such, it provides no legal basis for injunctive relief. Lastly, plaintiffs' allegation that they will be economically harmed through the loss of State aid is unsubstantiated and presents no real and immediate danger such as would warrant injunctive relief.[2] Furthermore, plaintiffs have an adequate remedy at law available to them in the nature of a writ of *mandamus* which commands the officer or body to whom it is directed to perform some specific duty to which the petitioner is entitled by right. Although *mandamus* will not control discretionary performance by an official, it will lie to compel the performance of a duty purely ministerial in character. *Holland v. Quinn* (1978), 67 Ill. App. 3d 571, 573, 385 N.E.2d 92.

As support for their position that irreparable harm was established, plaintiffs rely on *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 233, and *Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 433 N.E.2d 958. However, this reliance is clearly misplaced. In *Bio-Medical*, a Medicaid vendor filed suit to enjoin the Department of Public Aid from suspending the vendor from the Medicaid program. In affirming the trial court's decision to grant a preliminary injunction, the appellate court stated that because 90% of vendor's business involved Medicaid payments, "wrongful suspension from the Medicaid program, for any length of time, would cause damages of an uncertain magnitude." (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549.) In the instant case, there are only five students involved and plaintiffs have not shown that loss of State aid, if any, will either be felt immediately or have any noteworthy financial impact on plaintiffs. In *Oscar George Electric Co.*, the court held that when a suit for injunctive relief is brought pursuant to express statutory authorization, there is no need to show either irreparable harm or lack of an adequate remedy at law. Plaintiffs, however, interpreted the holding to state that a showing of a violation of a statute by a public body obviates the need to prove irreparable harm in an action for injunctive relief. Because this is not the holding and because the School Code does not specifically authorize injunctive relief, *Oscar George Electric Co.* is of no persuasive value in the case at bar.

We next address the issue of whether intervenors are properly before this court. In doing so, we will focus on two critical consider-

---

[2]Pursuant to the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 482 *et seq.*), State school tax is assessed and collected on an annual basis (Ill. Rev. Stat. 1981, ch. 120, par. 635).

ations: (1) whether the trial court retained jurisdiction over the issue of intervention after plaintiffs filed a notice of appeal; and (2) if so, whether the grant of intervention was proper, either as one of right or one of judicial discretion.

Regarding jurisdiction, plaintiffs argue that their notice of appeal filed on August 31, 1982, deprived the trial court of jurisdiction to enter any order affecting the appellate process. We disagree and find *Cygnar v. Martin-Trigona* (1975), 26 Ill. App. 3d 291, 325 N.E.2d 76, upon which plaintiffs mistakenly rely, to be dispositive of the issue. In *Cygnar*, defendant filed a motion for a preliminary and permanent injunction requesting that the judge of record be enjoined from participating in the case. The motion was denied and defendant then filed a notice of appeal. Before the appeal was heard, the cause proceeded and judgment was entered against the defendant. There was no notice of appeal filed from the judgment entered. Rather, the appeal concerned only the denial of injunctive relief. On appeal, defendant claimed that the notice of appeal divested the trial court of all jurisdiction in the case and the trial court incorrectly proceeded on the cause. In response, the appellate court stated:

"The defendant is in error in his belief that his filing of a notice of appeal on February 7, 1974, divested the trial court of all jurisdiction in this case. The filing of the notice of appeal vested jurisdiction in the appellate court and the appellate court can consider only questions existing when the notice was filed. We have no jurisdiction to consider subsequent proceedings. [Citation.] Of course, once the jurisdiction of the appellate court attaches by reason of the filing of a notice of appeal, the trial court is without jurisdiction to take any further action insofar as the notice of appeal affects the subject that the trial court might seek to act upon. [Citation.] The trial court retains jurisdiction, however, to hear and determine matters arising independent of and unrelated to that portion of the proceeding that pends on appeal. [Citation.] Thus, the filing of the notice of appeal vested jurisdiction in this court of a single issue-- whether the trial court erroneously denied the motion for preliminary or permanent injunction. It had no effect whatsoever upon the merits of the case, did not bring those issues before this court, and we have no jurisdiction to consider them." *Cygnar v. Martin-Trigona* (1975), 26 Ill. App. 3d 291, 293-94.

■ Similarly, in the pending case, on August 31, 1982, the trial court denied plaintiffs' motion for a temporary restraining order and also denied the petition for leave to intervene filed by attorneys for

the detachment area students, without prejudice, granting them five days within which to amend the petition. Plaintiffs filed a notice of appeal that afternoon. The notice stated, in pertinent part, that it is an "appeal from the Order of the Circuit Court of Cook County denying their Motion for a Temporary Restraining Order." It did not address the issue of intervention. The following day, attorneys for the students appeared in court with an amended petition and leave to intervene was granted. Subsequently, plaintiffs filed an amended notice of appeal which included an appeal of the grant of intervention. As the facts clearly illustrate, the trial court's denial of leave to intervene on August 31 was not a final determination which operated to fix and dispose of the petitioners' rights. On the contrary, petitioners were expressly given leave to amend within five days. Therefore, because the denial of intervention was not final and appealable, jurisdiction regarding that issue remained with the trial court. *Myers v. Myers* (1977), 51 Ill. App. 3d 830, 837, 366 N.E.2d 1114.

Regarding the grant of intervention, the question of when a third party may intervene is governed by section 2—408 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—408, formerly Ill. Rev. Stat. 1981, ch. 110, par. 26.1), which provides, *inter alia*, that a party may intervene as a matter of right or by order of the court. The Code further provides that before a court grants discretionary intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Ill. Rev. Stat. 1981, ch. 110, par. 2—408(e).

In the case at bar, because the trial court neglected to state whether it was permitting intervention as of right or as a matter of discretion, we will address both situations. As a general principle, one who petitions to intervene must have an enforceable or recognizable right and more than a general interest in the subject matter of the proceedings. (*Bishop v. Village of Brookfield* (1981), 99 Ill. App. 3d 483, 487, 425 N.E.2d 1113.) We concede that the students residing in the detachment area have more than a general interest in the proceedings. However, after careful review of the School Code, we fail to find an enforceable right for nonresident students to attend out-of-district schools on a tuition-free or tuition-escrow basis. Defendant argues that if the petition for detachment is denied, the tuition checks currently held in escrow will be cashed and tuition will, in effect, have been paid. More importantly, however, is defendant's stated position that if detachment is granted, residency will be retroactive to the beginning of the school year and the tuition checks will be returned. In our opinion, there is no authorization within the School Code for ret-

roactive residency in a detachment situation. On the contrary, section 7—9 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 7—9) expressly sets forth the effective date for residency changes when detachment is authorized. Therefore, because the right sought to be protected by intervenors is not provided by law, they have no legal interest, no enforceable or recognizable right which could be prejudiced by any judgment or order in the action in which they have petitioned to intervene. *People ex rel. Byron v. Board of Trustees* (1980), 90 Ill. App. 3d 88, 93-94, 412 N.E.2d 1188.

■ Furthermore, because the right to have students attend schools outside their district upon payment of nonresident tuition is discretionary with the individual school boards (Ill. Rev. Stat. 1981, ch. 122, par. 10—22.5), it, too, is not an absolute right of nonresident students. It is the discretionary right, within discriminatory limitations, of the individual school board. Thus, while we recognize that the students have a keen interest in this matter, that interest simply does not rise to the level of an enforceable right. The school board alone is the proper party before the court and, as the proceedings have thus far indicated, the board can adequately protect its rights and the students' interests. Accordingly, we hold that intervention as of right is not warranted.

■ Having determined that the students do not have the requisite protectible interest to intervene as of right, we next consider whether the trial court abused its discretion in allowing intervention by leave of court. (Ill. Rev. Stat. 1981, ch. 110, par. 2—408(b).) The purpose of intervention is to expedite litigation by disposing of the entire controversy in one action to prevent a multiplicity of actions. Consequently, the statutory intervention provisions are to be liberally construed. (*Bishop v. Village of Brookfield* (1981), 99 Ill. App. 3d 483, 487, 425 N.E.2d 1113.) It is our opinion that when the trial court granted petitioners the discretionary right to intervene, it did not unnecessarily delay the proceedings to the prejudice of plaintiffs. Instead, the court assured that all interested parties were given the opportunity to be heard in court. Therefore, we conclude that the trial court did not err or abuse its discretion when it granted the petition for leave to intervene.

Finally, it is important to note that this opinion addresses the sufficiency of the pleadings solely for the determination of injunctive relief, jurisdiction and leave to intervene. Because the substantive issues presented by plaintiffs have not been ruled upon by the trial court, we purposely refrain from expressing any opinion as to their merits. *In re Marriage of Weiss* (1980), 87 Ill. App. 3d 643, 650, 409 N.E.2d 329.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.