ROBERT R. ARMSTRONG *et al.*, Plaintiffs-Appellants, v. CRYSTAL LAKE PARK DISTRICT *et al.*, Defendants-Appellees.

Second District   No. 2—85—0373

Opinion filed December 12, 1985.

David W. McArdle, of Zukowski, Rogers & Flood, of Crystal Lake, for appellants.

Thomas F. Baker, of Cowlin, Ungvarsky, Kukla & Curran, of Crystal Lake, for appellees.

JUSTICE HOPF delivered the opinion of the court:

This interlocutory appeal is from an order of the circuit court of McHenry County denying a motion for a preliminary injunction by plaintiffs, Robert Armstrong and Fulton Contracting Company (Fulton). Plaintiffs' motion, filed with their complaint for declaratory relief, sought to enjoin defendants, Crystal Lake Park District (district) and Carey Electric Contracting, Inc. (Carey), from engaging in the construction of lighting fixtures at Lippold Park in Crystal Lake during the pendency of the underlying complaint. Plaintiffs alleged in their complaint that defendant district's proposal for the work to be done at Lippold Park violated section 8—1(c) of the Illinois Park District Code (Ill. Rev. Stat. 1983, ch. 105, par. 8—1(c)) in that the proposal did not allow for competitive bidding. Specifically, plaintiffs alleged that the district's plans favored those contractors who bid materials manufactured by Musco-Sports Lighting, Inc., and that, although plaintiff Fulton was the lowest responsible bidder, the district's contract was awarded to defendant Carey, which bid Musco ma-

terials. At the hearing on plaintiffs' motion the trial court denied the motion, explicitly finding that the plaintiffs had not established the likelihood of success on the merits of the case. Plaintiffs appeal, contending that the trial court abused its discretion in denying their motion for a preliminary injunction.

At the hearing on plaintiffs' motion for a preliminary injunction Lawrence Thomas, a civil engineer who was currently serving as a commissioner for the Crystal Lake Park District, testified that the improvements for the district's Lippold Park included three softball fields and one baseball field which were to be lit. Thomas stated that the district had advertised for bids on the lighting of the ball fields. Among the bidders responding were plaintiff Fulton and defendant Carey. Thomas stated that on the recommendation of Roger Muterspaugh, who was hired by the district as a consultant for the development of Lippold Park, the district rejected Fulton's bid, even though it was the apparent low bidder, because the bid failed to meet the performance standard set forth in the specifications and plan for the lighting system. According to Thomas, the second lowest bidder, Carey, did comply with the specifications and the contract was consequently awarded to Carey.

Roger Muterspaugh, the architect retained by the district to design the lighting facilities for the soccer and baseball fields in Lippold Park, was called as an adverse witness under section 2—1102 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102.) Muterspaugh stated he had no prior experience with lighting designs for ball fields. He testified that in the fall of 1984 representatives from Musco-Sports Lighting, Inc., made a presentation to the witness and the district's superintendent of parks. A few months later Musco sent the district an electrical design detail for the ball fields, including a one-line diagram, pole wiring diagram, and typical pole design. The witness admitted that he transferred verbatim the pole wiring diagram prepared by Musco to the final ball-site plan for Lippold Park. Muterspaugh stated that he also transferred verbatim the fixture list prepared by Musco with the exception that the uniformity ratio specified on the district's plan differed from Musco's as a result of discussions the district had had with a number of different manufacturers of lighting systems. The witness related that there were differences between the pole design on the district's plan and that on Musco's.

Muterspaugh pointed out that the district had not sought the electrical design plan from Musco. The witness recounted that the district had spoken with three other manufacturers who had discussed their ability to do the lighting job and had provided layouts of poles and the

number of fixtures. Muterspaugh testified that he prepared the plan containing the final specifications for the lighting system for Lippold Park, specifying Musco-Sports Lighting, Inc., as the manufacturer of the luminaire system.

In January of 1985 the witness retained a professional engineer, Robert Schlehuber, to whom the witness sent the district's plans and specifications for the lighting system for Schlehuber's review and comments. Among these documents was a copy of the electrical design lighting plan prepared by Musco. No other electrical layouts by other manufacturers were sent to Schlehuber for his review. Schlehuber subsequently sent the witness a letter, indicating that the specifications that the witness submitted to Schlehuber were incomplete, unclear and proprietary. Muterspaugh would testify later that upon receipt of Schlehuber's letter he complied with Schlehuber's comments by rewriting the specifications accordingly. By the time Muterspaugh submitted the final draft of the lighting system to bidders, he had changed 75% to 80% of the paragraphs of the initial set of specifications submitted by Musco.

The final specifications for the lighting plan did specify Musco as manufacturer of the luminaire system. Muterspaugh explained that other manufacturers with whom the district had spoken had not submitted samples of their products for the district's review. Musco products were specified in the final specifications because the district needed to establish a "benchmark for comparison." Muterspaugh testified that contractors submitting bids containing any items, not just nonMusco products, which differed from planned specifications were required to submit additional information. This information had to be submitted 10 days prior to the end of the 30-day bid period.

Further testimony by Muterspaugh showed that he had no personal or financial connection with Musco-Sports Lighting, Inc., or its representatives; that Musco's own subsidiary, Structural Contractors, Ltd., unsuccessfully bid on the lighting project; that Musco products are available to all contractors; and that within the paragraph dealing with the luminaire assembly (in which Musco was specifically listed) the following statement appeared:

> "Use of supplier/manufacturer names and or designations herein are for convenience only and are not intended to limit the submittal/acceptance of other equipment/systems which meet the performance specifications stated herein."

Muterspaugh explained that this statement did not comprise part of the original proposed specifications given to the district by Musco but was a change he had included.

The testimony of Robert Schlehuber, a professional engineer specializing in electrical engineering, showed that he was experienced in reviewing specifications for soliciting bids on electrical designs for the lighting of ball fields. Schlehuber stated that Muterspaugh had asked him to review certain documents dealing with the lighting system of the ball fields in Lippold Park. The witness was questioned regarding handwritten notations which he had placed on the specifications, defining the proposed electrical design system for the fields, which Muterspaugh had sent to the witness. Schlehuber explained that he had noted that if the district listed other reputable manufacturers, besides Musco, in its specifications for the lighting plan, the listing would relieve bidders, using nonMusco products, from having to submit their bids 10 days prior to the end of the bidding period. Additionally, Schlehuber had noted that it could take a manufacturer two weeks to prepare the documents a contractor would need to submit with his bid and, thus, the witness felt it might be unreasonable to require a contractor using nonMusco products to submit his bid 10 days prior to the end of the 30-day bidding period. Also, Schlehuber had noted on the specifications that the remote ballast system the district was requiring as part of the luminaire assembly system was only offered by Musco.

During further testimony by Schlehuber it was revealed that the specifications for the lighting system which he had reviewed were the preliminary ones and that he had never reviewed the final specifications. Additionally, Schlehuber testified that it was not an uncommon procedure in specifications of the type in question for a specified manufacturer and its products to be named as a "benchmark." To do so enabled bidders to know what types of products/system the letting authority was seeking. Schlehuber also stated that, as long as there is a provision in the specifications is strictly for convenience and not intended to limit acceptance of other manufacturers' systems meeting the performance specifications, the naming of that specified manufacturer was not improper.

Nick Heinz, an electrical supplier, testified that none of the manufacturers with which he was familiar supplied a remote (enclosed) ballast system like Musco's, but that a contractor could supply the enclosure for a ballast system to make it remote. Heinz also related that it was normal, competitive practice among lighting manufacturers, such as Musco, to submit a proposal for a lighting system, using the manufacturer's name in the proposal, before plans and specifications had been drawn up for a proposed project. With some reservation Heinz stated that it would not be unusual for the party planning a project to

take certain parts of a manufacturer's plans and specifications which the planner wanted to utilize in its final project plans and specifications and transfer them verbatim to its blueprints.

Kirk Reimer, superintendent of parks for the district, testified as to his involvement in the bidding process for the lighting project in Lippold Park, stating that he had looked at more than one manufacturer's system of lighting prior to the district's drawing up of its specifications. Reimer related that Muterspaugh had outlined, in a letter to Reimer, Muterspaugh's assessment of the bids submitted by the various contractors and the degree to which they met the requirements of the bidding. The reasons set forth in the letter constituted the bases for the district's acceptance of Carey's bid and rejection of Fulton's.

The trial court denied plaintiffs' motion for a preliminary injunction on the basis that plaintiffs had failed to prove the likelihood of their success on the merits of the case. Plaintiffs appeal, contending that the trial court abused its discretion in denying plaintiffs' motion for a preliminary injunction.

■ A preliminary injunction is an extraordinary remedy which should be granted with utmost care and only where the party seeking it establishes a clear right to such relief. (*People ex rel. Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 129 Ill. App. 3d 584, 592, 472 N.E.2d 547; *Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1145, 441 N.E.2d 927.) The purpose of a preliminary injunction is not to determine the merits of the case but to preserve the *status quo*. (*Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 130 Ill. App. 3d 149, 151, 474 N.E.2d 383.) The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court (*MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 240, 445 N.E.2d 418), and that decision will not be overturned on review absent a showing of the abuse of that discretion. *Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1145, 441 N.E.2d 927.

■ To warrant the issuance of a preliminary injunction the party seeking relief must show: (1) it possesses a clearly ascertainable right that needs protection; (2) it will be irreparably harmed without the protection; (3) it has no adequate remedy at law; (4) it is likely to be successful on the merits; and (5) it will suffer greater harm without the injunction than defendant will suffer if it is issued. (*People ex rel. Hartigan v. Stianos* (1985), 131 Ill. App. 3d 575, 579, 475 N.E.2d 1024.) In view of our disposition of this case, it is necessary to address only the likelihood of plaintiffs' success on the merits.

■ To show a likelihood of success on the merits, a party is not required to make out a case which would, in all event, warrant relief at a final hearing. (*Lindsey v. Board of Education* (1984), 127 Ill. App. 3d 413, 419, 468 N.E.2d 1019.) Rather, a party need only raise a fair question as to the existence of the rights claimed, lead the court to believe that it will probably be entitled to the relief sought if the proof sustains the allegations of the petition, and make it appear advisable that the positions of the parties should remain as they are until the court has had an opportunity to consider the case on its merits. *Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 130 Ill. App. 3d 149, 151, 474 N.E.2d 383.

Fulton argues that the evidence presented at the hearing on the motion for preliminary injunction established the likelihood of its success in proving that the district did not allow competitive bidding on its lighting project. According to Fulton, the evidence showed that the district's intention, as illustrated by its specifications for bids, was to award the lighting system contract only to a bidder which utilized Musco products in its bid.

The evidence did show that representatives of Musco, prior to the district's advertisement for bids, submitted plans for a ball field lighting system and that, in large part, these plans were transferred verbatim by the architect, Muterspaugh, to the final site plan. However, the evidence also established that it was not unusual for a lighting manufacturer to submit a design plan to a potential client prior to the solicitation of bids. Moreover, Muterspaugh testified that the district had not sought the electrical design plan and that it had talked with other manufacturers regarding their ability to do the lighting project but that, unlike Musco, the other manufacturers had not submitted samples of their products for the district's review. Also, Muterspaugh's testimony established that prior to the submission to the bidders of the final draft of the lighting system, he changed 75% to 80% of the set of specifications initially submitted by Musco to the district.

Further, the evidence showed that it was not unusual for specifications to bidders to list a specified manufacturer and a product as a "benchmark" so that bidders knew the type of products a letting authority was seeking. Moreover, directly preceding the specifications within the section dealing with the luminaire system appeared a provision explaining that the use of a manufacturer's name within the specifications was strictly for convenience and not intended to limit acceptance of other manufacturers' products which met the specifications. Additionally, where Musco's name appeared within the specifications, it was immediately followed by the phrase "or an approved

equal." The district was already familiar with the performance standard of the Musco products because of the specifications originally presented to the district by Musco's representatives. However, it was unfamiliar with the performance standard of nonMusco products. Therefore, we believe that it was not unreasonable for the district to require that bidders utilizing nonMusco products, or any product which did not meet the district's specifications, provide additional information and submit it 10 days prior to the bidding period.

Fulton points out that the district specified that it wanted a remote ballast system as part of its lighting system and that testimony showed that Musco was the only manufacturer which had a remote ballast. However, testimony also showed that a contractor could build an enclosure for the ballast, thereby making it remote.

It is our opinion that the district's specifications clearly did not show that only a bidder using Musco products in its bid would be selected. Rather, they showed that the district was requiring that a certain standard of performance had to be met in order for a contractor to be awarded the contract for the lighting system. Despite the fact that Fulton was the low bidder, its bid was not rejected because of its failure to utilize Musco products, but because it failed to meet at least 11 specifications required for acceptance of its bid.

It is the requirement of section 8—1(c) of the Illinois Park District Code that the contract for work in question shall be let to the lowest responsible bidder. (Ill. Rev. Stat. 1983, ch. 105, par. 8—1(c).) However, bids must conform to the requirements of the invitation to bid (*Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 344, 422 N.E.2d 1078), and the fact that a contractor submits the lowest bid will not automatically require that the contract be granted to that contractor. (*Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 963, 433 N.E.2d 958.) Public officials possess the discretion to determine who is the "lowest responsible bidder." (*Northwest Disposal Co. v. Village of Fox Lake* (1983), 119 Ill. App. 3d 546, 551, 456 N.E.2d 691.) The term "responsible bidder" is incapable of any exact definition (*Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1984), 104 Ill. App. 3d 957, 964, 433 N.E.2d 958), but it has been held that the term "responsible" includes the ability of the contractor to discharge his obligations in accordance with what may be expected under the terms of the contract (*Hallett v. City of Elgin* (1912), 254 Ill. 343, 347, 98 N.E. 530). Here, Fulton failed to bid the lighting system specified in that it had included in its bid 11 exceptions to the specifications and plan. On the other hand, Carey, the sec-

ond lowest bidder, bid the project as specified.

A party seeking a preliminary injunction must establish by a preponderance of the evidence all the prerequisites necessary to warrant the issuance of the injunction. (*Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 256, 465 N.E.2d 554.) During the trial court's rather extensive hearing, the court heard the testimony of witnesses and received supporting evidence as to the specifications and plans for bids on the district's lighting system. The record reflects that Fulton failed to make a sufficient showing of a likelihood of success in a trial on the merits, and, therefore, did not clearly establish the need for a preliminary injunction. Accordingly, we find that the trial court's order denying injunctive relief was proper and did not constitute an abuse of the court's discretion.

For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

NASH, P.J., and SCHNAKE, J., concur.