868 F.2d 1085
 52 Ed. Law Rep. 60
 BIG COUNTRY FOODS, INC., an Alaska corporation, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF the ANCHORAGE SCHOOL DISTRICT,
ANCHORAGE, ALASKA; Department of Agriculture; Richard E.
Lyng, Secretary of Agriculture; William Demmert,
Commissioner of Education for the State of Alaska,
Defendants-Appellees.
 No. 88-4018.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 5, 1988.
Decided Feb. 28, 1989.
 
 Sema E. Lederman, Hansen & Lederman, Anchorage, Alaska, for plaintiff-appellant.
 Neil J. Evans, Asst. U.S. Atty., and Susan R. Sharrock, Thomas E. Wagner, Asst. Atty. Gen., Hellen, Partnow & Condon, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before BROWNING, WALLACE and BRUNETTI, Circuit Judges.
 OPINION
 WALLACE, Circuit Judge:
 
 
 1
 Big Country Foods, Inc. (Big Country) appeals the district court's denial of its motion for a preliminary injunction. Big Country, after unsuccessfully bidding for a contract to supply milk to the Anchorage School District for the 1988-89 school year, sought to enjoin the school district from entering into a contract with any supplier other than itself. Big Country also sought to enjoin both the Secretary of the United States Department of Agriculture and Alaska's Commissioner of Education from authorizing the disbursement of federal funds to the Anchorage School District until its application for permanent injunction is heard. Big Country argued that Alaska statutory procedures used to award the contract violate the federal Constitution's commerce clause and federal statutes governing the school district's procurement of milk. We have jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1), and we affirm.
 
 
 2
 * Big Country is a distributor of milk harvested in the State of Washington. It has been the successful bidder for the contract to supply milk to the Anchorage School District in five of the last eight years. The Anchorage School District receives, via the State of Alaska, federal funds which subsidize the purchase of milk for Anchorage school children. Federal funds are granted to the State of Alaska as a voluntary participant in the Federal School Breakfast Program, 42 U.S.C. Sec. 1771, et seq., and the National School Lunch Program, 42 U.S.C. Sec. 1751, et seq. Participants in these federal programs are required to procure milk "in a manner that provides maximum open and free competition." Uniform Federal Assistance Regulations, 7 C.F.R. Sec. 3015.182 (1988).
 
 
 3
 Sometime between May 11 and 26, 1988, Big Country submitted a bid of $360,000 for the contract to supply milk to the Anchorage School District for the 1988-89 school year. Two other suppliers, Northern Dairies and Matanuska Maid Dairy, submitted bids of $384,625 and $385,000, respectively. Pursuant to an Alaskan preference statute, Alaska Stat. Sec. 36.15.050(a) (1988), which requires schools receiving state funds to purchase dairy products harvested in the State of Alaska if the price is no more than seven percent higher than products of like quality harvested outside the state, the contract was awarded to Matanuska Maid Dairy. Big Country filed this motion for a preliminary injunction, claiming that the Alaskan preference statute violates the federal Constitution's dormant commerce clause and the requirement under federal regulations of free and open competition for the procurement of milk.
 
 II
 
 4
 The merits of Big Country's claims raise a plethora of fascinating and complex issues, such as standing, mootness, ripeness, federalism, statutory interpretation, and the scope of the commerce clause. We need not, indeed cannot, resolve any of these issues due to the posture of this case. Our review of an order denying a preliminary injunction is very limited. Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 673 (9th Cir.1988) (Caribbean Marine ); Oakland Tribune, Inc. v. Chronical Publishing Co., 762 F.2d 1374, 1376 (9th Cir.1985) (Oakland Tribune ); Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 752-53 (9th Cir.1982) (Sports Form ). The grant or denial of a preliminary injunction lies within the discretion of the district court. United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174 (9th Cir.1987), (Odessa Union ); Zepeda v. United States Immigration and Naturalization Service, 753 F.2d 719, 724 (9th Cir.1983) (Zepeda ); Sports Form, 686 F.2d at 752. We will reverse "only if the district court relied on an erroneous legal premise or abused its discretion." Sports Form, 686 F.2d at 752. We will not reverse merely because we would have arrived at a different result. Id.
 
 
 5
 The district court relies on an erroneous legal premise "if the court does not employ the appropriate legal standards which govern the issuance of a preliminary injunction." Id., citing Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1200 (9th Cir.1980). "To determine whether there has been an abuse of discretion, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... The [reviewing] court is not empowered to substitute its judgment for that of the [district court].' " Sports Form, 686 F.2d at 752, quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted).
 
 
 6
 We emphasize again the limited scope of our review of a district court order granting or denying a preliminary injunction. We do so because we are concerned that parties appeal such orders for the purpose of ascertaining, prematurely, our views on the merits. As we repeatedly have cautioned, our disposition in these appeals offers little if any guidance on the proper resolution of the underlying merits. Caribbean Marine, 844 F.2d at 673; Zepeda, 753 F.2d at 724; Sports Form, 686 F.2d at 753. The purpose of a preliminary injunction is to preserve rights pending resolution of the merits of the case by the trial. It ordinarily does not obviate the need to proceed with preparation for trial and trial. An appeal of the district court's decision on a motion for a preliminary injunction often will result in unnecessary delay to the parties and inefficient use of judicial resources. In this case, for example, Big Country probably could have secured a disposition on the merits of a motion for a permanent injunction in less time than it took to proceed with this appeal. It appears, however, that this case has lain dormant in the district court: Big Country has done nothing towards resolving its action for permanent relief. We question the appropriateness of Big Country's attempt to use the appellate process to resolve a question that must first be resolved in the district court. Apparently Big Country did not heed our admonitions in Caribbean Marine, Zepeda, and Sports Form.
 
 III
 
 7
 To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. Odessa Union, 833 F.2d at 174; Sports Form, 686 F.2d at 753; see also Oakland Tribune, 762 F.2d at 1376. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Odessa Union, 833 F.2d at 174; Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir.1987) (2-1) (Arcamuzi ); Oakland Tribune, 762 F.2d at 1376. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury. Arcamuzi, 819 F.2d at 937; Oakland Tribune, 762 F.2d at 1376; American Passage Media Corp. v. Cass Communications, Inc., 750 F.2d 1470, 1473 (9th Cir.1985).
 
 
 8
 Big Country argues in its opening brief that the irreparable injury it will suffer if injunctive relief is not granted is the "loss of a contract." This loss is irreparable, Big Country asserts, because even if it is successful on the merits, Alaskan law provides no monetary damages for this kind of challenge.
 
 
 9
 Big Country does not articulate the form of injury that "loss of a contract" will cause it to incur, apart from its ambiguous assertion late in its brief that "[i]n the absence of injunctive relief, Big Country will lose a $360,000 contract, a major source of income for a small company." Income is, of course, not the same as profits. Yet we assume, in light of this cryptic reference and Big Country's argument with respect to the unavailability of monetary damages under Alaskan law, that Big Country is referring to pecuniary injury--lost profits. If so, we need not decide if Big Country has an adequate remedy at law for this injury. The record is barren of evidence of lost profits. Big Country merely filed an affidavit indicating that its bid was for $360,000. The gross amount of a contract in no way reflects the amount of profit Big Country may have realized had it been awarded the contract. As far as we know, Big Country may have lost money on the contract.
 
 
 10
 Big Country offers for the first time in its reply brief a new theory of damages. It suggests that its real injury is the inability to participate in a fair bidding procedure; and this injury, it suggests, is irreparable even without a showing of lost profits. For this unique proposition, Big Country cites an out-of-circuit district court decision, United Technologies Communications Co. v. Washington County Board, 624 F.Supp. 185, 188 (D.Minn.1985). United Technologies, in turn, cites no direct authority for this proposition, nor has United Technologies been subsequently cited by any court for this theory. In light of the general rule that an appellant cannot raise a new theory for the first time in its reply brief, we refuse to consider this novel notion of irreparable injury. Oakland Tribune, 762 F.2d at 1376 (refusing to recognize novel theory of irreparable injury not raised in opening brief); see also Northwest Acceptance Corp. v. Lynnwood Equipment, Inc., 841 F.2d 918, 924 (9th Cir.1988). Although the district court did not find that Big Country failed to show irreparable injury, we may affirm on any ground supported by the record. Islamic Republic of Iran v. Boeing Co., 771 F.2d 1279, 1288 (9th Cir.1985). We hold that the district court did not abuse its discretion in denying Big Country's motion for a preliminary injunction.
 
 
 11
 AFFIRMED.