JOSEPH J. HENDERSON AND SON, INC., Plaintiff-Appellant, v. THE CITY OF CRYSTAL LAKE et al., Defendants-Appellees.

Second District    No. 2—00—0825

Opinion filed February 8, 2001.

J. John Henderson and Donna R. Henderson, both of Henderson & Henderson, P.C., of Waukegan, for appellant.

Michael E. Coppedge, of Cowlin, Naughton, Curran & Coppedge, of Crystal Lake, for appellee City of Crystal Lake.

Howard R. Teegen, of Soffietti, Johnson, Teegen, Phillips & Ortiz, Ltd., of Fox Lake, for appellee Seagren/Shales, Inc.

JUSTICE BOWMAN delivered the opinion of the court:
Plaintiff, Joseph J. Henderson & Son, Inc. (Henderson), brings this interlocutory appeal from the trial court's order denying Henderson's motion for a preliminary injunction. We have jurisdiction over this matter pursuant to Supreme Court Rule 307(a) 188 Ill. 2d R. 307(a), eff. July 6, 2000), which provides that a party may appeal as of right an order refusing an injunction. Henderson contends that the

trial court abused its discretion in denying Henderson's motion for a preliminary injunction. We affirm.

In its verified complaint, Henderson alleged that it submitted the lowest bid to the City of Crystal Lake (City) for a project to improve one of the City's waste water treatment plants. Instead of awarding the bid to Henderson, the City awarded it to the only other bidder, Seagren/Shales, Inc. (Seagren). Henderson bid approximately $13.9 million on the project, and Seagren bid almost $14.2 million. The city council rejected Henderson's bid because of concerns that Henderson's business relationship with a subsidiary of the project's supervising engineer, Baxter & Woodman, Inc. (Baxter), would create the appearance of impropriety. Henderson's complaint sought declaratory and injunctive relief and a writ of *mandamus* directing defendants to award the contract to Henderson.

Initially, the trial court denied Henderson's motion for a preliminary injunction because it determined that Henderson was unlikely to succeed on the merits. The trial court decided that, because Henderson did not allege fraud in the award of the contract to its competitor, it did not have grounds for relief. The court further concluded that it did not have the authority to decide whether the City's exercise of its discretion was reasonable. Henderson appealed, and we vacated the trial court's decision. *Joseph J. Henderson & Son, Inc. v. City of Crystal Lake*, No. 2—00—0273 (2000) (unpublished order under Supreme Court Rule 23) (*Henderson I*). We remanded the cause for a hearing and a specific finding as to whether the City's conduct was the result of unfair dealing, favoritism, or a similar type of arbitrary conduct.

Upon remand, the trial court conducted a hearing and heard testimony from several witnesses. The following testimony is relevant to the issue before us.

Darryl Gavle, the president and chief executive officer of Baxter, testified that Baxter had served as a consulting engineer for the City for over 50 years. In the 1950s, the City adopted an ordinance naming Baxter as its consulting engineer. Baxter had designed the original waste water treatment plant as well as the expansion of the plant that was the subject of the contract at issue. Baxter had also supervised the bidding process and prepared the notice and instructions to the bidders. After the bids were opened, Gavle informed the City by letter that, in Baxter's opinion, both Henderson and Seagren were responsible and qualified to complete the project. Baxter recommended that the City consider awarding the contract to Henderson if the City found both bidders to be responsible.

Gavle further testified that Baxter owned 79% of a limited liability

corporation named B&W Design/Build L.L.C. (B&W). Beginning in 1997 or 1998 and continuing through the present, B&W contracted with Henderson to provide design and construction supervision services on numerous projects. Gavle testified that all of B&W's profits for 1999 came from work B&W had done jointly with Henderson.

Aaron Shepley, the City's mayor, testified that he and the city council were worried that the relationship between Henderson and B&W would create an appearance of impropriety. Shepley further testified that it would have been impractical for the City to hire a different supervising engineer because of Baxter's familiarity with the waste water treatment plant. Also, it would have been costly to bring a different supervising engineer up to speed regarding the details of the plant and Baxter's design for the improvements.

At the close of Henderson's presentation of evidence, defendants moved for a directed finding. The trial court concluded that the City's award of the contract to Seagren was not based on favoritism, unfair dealing, fraud, or any other arbitrary conduct. Consequently, the court granted defendants' motion for a directed finding and denied Henderson's motion for a preliminary injunction. Henderson now appeals the denial of its motion for a preliminary injunction.

■ To succeed on a motion for a preliminary injunction, the moving party must plead and prove each of the following elements: a clear right or interest in need of protection, irreparable harm if the injunction is not granted, the lack of an adequate remedy at law, and the likelihood of success on the merits. *North Pole Corp. v. Village of East Dundee*, 263 Ill. App. 3d 327, 334 (1994). In addition, the trial court must determine whether the balance of hardships to the parties supports a grant of preliminary injunctive relief. *North Pole*, 263 Ill. App. 3d at 334. The decision to grant or deny a preliminary injunction lies within the sound discretion of the trial court, and we will not disturb the trial court's decision absent a clear abuse of discretion. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 516 (1996).

Here, the trial court focused only on the likelihood of Henderson's success on the merits. On this issue, plaintiff needed to show only that it raised a fair question as to the existence of plaintiff's right and that the court should preserve the status quo until the case can be decided on its merits. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382 (1985). Here, the court found that Henderson was unlikely to succeed on the merits because there was no unfair dealing, favoritism, or arbitrary conduct on the City's part in deeming Seagren the lowest responsible bidder. We hold that the trial court did not abuse its discretion in denying Henderson's request for a preliminary injunction. Henderson did not demonstrate a sufficient likelihood of success on the merits.

■ The bidding statute at issue in this case provides that in municipalities of less than 500,000, except as otherwise provided, any work or other public improvement that costs more than $10,000 and is paid for in whole or in part by special assessment or special taxation shall be constructed pursuant to a contract let to the lowest responsible bidder after advertising for bids in the manner prescribed by ordinance. 65 ILCS 5/8—9—1 (West 1998). Unlike some competitive bidding statutes, section 8—9—1 does not set forth any factors for municipalities to consider when determining the lowest responsible bidder.

Henderson contends that the appearance of impropriety was not an appropriate factor for the City to consider when determining who was the lowest responsible bidder. Henderson relies on *Doyle Plumbing & Heating Co. v. Board of Education, Quincy Public School District No. 172*, 291 Ill. App. 3d 221 (1997), for the proposition that a public body's actions in rejecting the lowest bid may be considered unfair even if the public body articulated a good reason for its action.

In *Doyle*, a board of education did not award a contract to the lowest bidder because of the travel time between the lowest bidder's office and the project site. The bidding statute at issue in *Doyle* stated that in determining the lowest responsible bidder the board of education could consider, among other things, "quality and serviceability" (105 ILCS 5/10—20.21 (West 1994)). The court analyzed whether the "serviceability" consideration encompassed a contractor's response time for providing maintenance when the contract at issue did not require maintenance and there was no response time requirement in the bid specifications. The court held that the term "serviceability" referred to the "usefulness or durability of the supplies, materials or work," and not to the bidder's ability to provide service. *Doyle*, 291 Ill. App. 3d at 227. In reaching its conclusion, the court noted that interpreting "serviceability" to mean the ability to provide maintenance would promote favoritism and stifle competition because a local bidder would always have an advantage over an out-of-town bidder. *Doyle*, 291 Ill. App. 3d at 227.

We find *Doyle* inapplicable to the case before us. The holding is based on the court's interpretation of the term "serviceability," which is not a part of the bidding statute relevant to this case. Further, we do not find that the City's reason for naming Seagren as the lowest responsible bidder, namely, the desire to avoid the appearance of impropriety, has the effect of giving an advantage to any particular bidder.

■ Defendants cite to *S.N. Nielsen Co. v. Public Building Comm'n*, 81 Ill. 2d 290 (1980), as supportive of the City's discretion in determin-

ing the lowest responsible bidder. In *Nielsen*, the court considered whether a contractor's commitment to affirmative action was relevant to whether the contractor was responsible. The court discussed the definition of "responsible," noting that the term has been interpreted to mean "financially responsible and able to discharge one's obligations 'in accordance with what may be expected or demanded under the terms of the contract.' " *Nielsen*, 81 Ill. 2d at 299, quoting *People ex rel. Peterson v. Omen*, 290 Ill. 59, 67 (1919). In support of its holding that a contractor's employment of minorities was something that may be expected or demanded under the terms of the contract, the court noted:

> "Financial responsibility and the ability to perform the contract are \*\*\* not the only relevant factors, and the fact that a contractor submits the lowest bid will not automatically require that the contract be awarded to that contractor. As McQuillen states in his treatise on municipal corporations, 'In proper circumstances a contract may be awarded to one who is not the lowest bidder, where this is done in the public interest, in the exercise of discretionary power granted under the laws, without fraud, unfair dealing, or favoritism, and where there is a sound and reasonable basis for the award as made.' " *Nielsen*, 81 Ill. 2d at 299, quoting 10 E. McQuillen, Municipal Corporations § 29.73a, at 429-30 (3d ed. 1966).

■ In our view, the award of the contract to Seagren was an exercise of the City's discretionary power done in the public interest. Maintaining the public's confidence in a multimillion dollar project funded with public monies was a legitimate consideration for the city council when determining the lowest responsible bidder. Henderson has not persuaded us that the trial court abused its discretion when it found that the City's award of the contract to Seagren did not constitute favoritism, unfair dealing, or arbitrary conduct. There was uncontroverted evidence that Henderson had an ongoing business relationship with B&W and that Baxter owned almost 80% of B&W. The issue is not whether this relationship would have affected Baxter's or Henderson's performance, but whether the City acted unfairly, arbitrarily, or fraudulently in reaching its decision. Henderson did not present any evidence of fraud, unfair dealing, or favoritism. Rather, the evidence supported the trial court's determination that the city council validly exercised its discretion in the public interest when it deemed Seagren the lowest responsible bidder.

Last, we address Henderson's suggestion that one of our comments in *Henderson I* should influence our decision in this case. In *Henderson I*, we noted, "it is not clear how the possibility of Baxter & Woodman, Inc. breaching its fiduciary duty to monitor the plaintiff

makes the plaintiff less responsible." *Henderson I*, slip order at 3-4. However, we also stated that we were not determining whether the City's conduct was the result of favoritism or other arbitrary conduct. Thus, we are not bound by any comments we made in our previous Rule 23 order concerning the merits of Henderson's allegations.

Accordingly, for the reasons stated, we affirm the trial court's order denying Henderson's motion for a preliminary injunction.

Affirmed.

RAPP and GROMETER, JJ., concur.