KEEFE-SHEA JOINT VENTURE, Plaintiff-Appellant, v. THE CITY OF EVANSTON, Defendant-Appellee (DiPaolo Company, Intervening Defendant-Appellee).

First District (3rd Division) No. 1—01—4147

Opinion filed June 28, 2002.

Arthur M. Holtzman and Luke S. Misetic, both of Pedersen & Houpt, of Chicago, for appellant.

Jack M. Seigel, Corporation Counsel, for appellee City of Evanston.

Brian W. Ellis and John M. O'Bryan, both of Altheimer & Gray, and Cornelius F. Riordan and Michael A. Palermo, Jr., both of Riordan, Dashiell & Donnelly, Ltd., both of Chicago, for appellee DiPaolo Company.

PRESIDING JUSTICE HALL delivered the opinion of the court:

The plaintiff, Keefe-Shea Joint Venture, filed a complaint for injunctive relief and for the issuance of a writ of *mandamus* against

the defendant, the City of Evanston (Evanston), seeking to enjoin the defendant from proceeding on a public contract with the intervenor, DiPaolo Company (DiPaolo), and compelling Evanston to award the contract to the plaintiff. The circuit court denied preliminary injunctive relief and the writ of *mandamus*. The plaintiff brought an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).

Following oral argument, this court entered an order remanding this case to the circuit court in order for the circuit court to make certain findings with respect to the denial of the plaintiff's motion for a preliminary injunction. Upon remand, the circuit court issued a written order and again denied the plaintiff's motion for a preliminary injunction.

The plaintiff brings this timely interlocutory appeal from the circuit court's November 20, 2001, order denying it preliminary injunctive relief.

The sole issue on appeal is whether the circuit court erred in denying the plaintiff a preliminary injunction.

On November 20, 2001, the circuit court issued its written opinion. The court's findings and conclusions are summarized below.

### A. Irreparable Harm and an Inadequate Remedy at Law

The circuit court found that the plaintiff had failed to present any evidence on these two elements. The court rejected the plaintiff's argument that both elements were satisfied by the fact that the "plaintiff could not receive the contract if DiPaolo received the contract."

### B. A Clear Right in Need of Protection

The circuit court found that the plaintiff had presented some evidence to make a *prima facie* case on this element since the defendants did not dispute that the plaintiff was an unsuccessful bidder on the contract.

### C. Likelihood of Success on the Merits

1. The court found that, as a matter of law, the plaintiff did present a *prima facie* case questioning whether DiPaolo had the required tunneling experience. However, the *prima facie* case did not survive based upon the testimony of the witnesses and the bid documents.

2. The court found that the plaintiff had presented some evidence to make a *prima facie* case that DiPaolo failed to demonstrate that it had the proper machinery to do the work. However, the *prima facie* case did not survive based upon the testimony in the case.

3. The court found that the plaintiff had presented a *prima facie*

case as to whether DiPaolo followed the requirements for obtaining a waiver of the minority- and/or women-owned businesses (MBE/WBE) 15% utilization goal and that after weighing the evidence, the *prima facie* case survived. The court specifically found that DiPaolo provided copies of solicitation letters to only 14 rather than the 15 MBE/WBEs as required and that DiPaolo's ability to self-perform the contract was insufficient to support a waiver.

The circuit court denied the motion for a preliminary injunction.

On November 20, 2001, the plaintiff filed this interlocutory appeal.

## ANALYSIS

### I. Standards of Review

■ The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, and a reviewing court will not disturb the decision absent a clear abuse of discretion. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 516, 665 N.E.2d 1346, 1351-52 (1996); *Joseph J. Henderson & Son, Inc. v. City of Crystal Lake*, 318 Ill. App. 3d 880, 883, 743 N.E.2d 713, 716 (2001).

■ In this case, the circuit court granted a directed finding for the defendants pursuant to section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 2000)). When ruling on a section 2—1110 motion, the trial court must apply a two-part analysis. *In re Estate of Goldstein*, 293 Ill. App. 3d 700, 709, 688 N.E.2d 684, 690 (1997). First, the court must determine as a matter of law whether the plaintiff has presented a *prima facie* case on each of the elements of the case. That is, did the plaintiff present some evidence on each of the elements of the case? Second, if the plaintiff has presented a *prima facie* case, the court must consider and weigh all of the evidence offered by the plaintiff, including evidence favorable to defendant, to determine whether the *prima facie* case survives. *Goldstein*, 293 Ill. App. 3d at 709, 688 N.E.2d at 690.

If the trial court finds that the plaintiff has failed to present a *prima facie* case as a matter of law, the appellate standard of review is *de novo*. If the trial court moves on to consider the weight and quality of the evidence, finding no *prima facie* case remains, the appellate standard is the deferential " 'manifest weight of the evidence' " standard. *Goldstein*, 293 Ill. App. 3d at 709, 688 N.E.2d at 690.

However, in the present appeal, DiPaolo maintains that the proper standard of review of a section 2—1110 motion is whether the circuit court's decision is against the manifest weight of the evidence under either part of the *Goldstein* analysis, citing *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154, 407 N.E.2d 43 (1980).

■ DiPaolo misreads *Kokinis*. In that case, the court stated as follows:

"In any case in which the plaintiff has failed to make out a *prima facie* case, *i.e.*, he has not presented at least some evidence on every element essential to his cause of action, the defendant is entitled to judgment in his favor as a matter of law. When a defendant, as here, moves for judgment under section 64(3) [now section 2—1110], the trial judge must first determine, as a legal matter, whether the plaintiff has made out a *prima facie* case. If he has not, the court should, without more, grant the motion and enter judgment in the defendant's favor.

If, however, the plaintiff has made out a *prima facie* case, the trial judge, in his role as the finder of fact, must then weigh the plaintiff's evidence as aforesaid. This weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." *Kokinis*, 81 Ill. 2d at 154-55, 407 N.E.2d at 45.

Nothing in the above language suggests that the trial court weighs the evidence in determining the first prong of the *Goldstein* analysis. In fact, *Kokinis* specifically holds that the trial court determines as a matter of law whether the plaintiff has made out a *prima facie* case.

Therefore, under *Kokinis* and *Goldstein*, this court applies a *de novo* standard to the circuit court's determination of whether the plaintiff made out a *prima facie* case, *i.e.*, presented some evidence on each element required for the issuance of a preliminary injunction. Where the circuit court has determined that the plaintiff has made out a *prima facie* case as to an element and then weighed the evidence to determine if the *prima facie* case survives, this court applies the manifest weight of the evidence standard. *Goldstein*, 293 Ill. App. 3d at 709, 688 N.E.2d at 690.

## II. Scope of Review

■ The plaintiff has brought this interlocutory appeal pursuant to Rule 307(a)(1). In such an appeal, the only question before the reviewing court is whether there was a sufficient showing made to the trial court to sustain its order granting or denying the interlocutory relief sought. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399, 626 N.E.2d 199, 203 (1993). The rule may not be used as a vehicle to determine the merits of a plaintiff's case. *Postma*, 157 Ill. 2d at 399, 626 N.E.2d at 203.

## III. Preliminary Injunction Elements

We begin our analysis by reciting the elements necessary for the granting of a preliminary injunction.

■ To succeed on a motion for a preliminary injunction, the moving party must plead and prove each of the following elements: a clear right or interest in need of protection, irreparable harm if the injunction is not granted, the lack of an adequate remedy at law, and the likelihood of success on the merits. *Joseph J. Henderson & Son, Inc.*, 318 Ill. App. 3d at 883, 743 N.E.2d at 716. In addition, the trial court must determine if the balance of hardships to the parties supports the grant of preliminary injunctive relief. *Joseph J. Henderson & Son, Inc.*, 318 Ill. App. 3d at 883, 743 N.E.2d at 716. Because the purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits, the plaintiff does not carry the same burden of proof that is required to prevail on the ultimate issue. *Williams Brothers Construction Co. v. Public Building Comm'n*, 243 Ill. App. 3d 949, 955-56, 612 N.E.2d 890, 894 (1993).

Of the above elements, the circuit court found that the plaintiff had established that it had a likelihood of success on the merits and a clear right in need of protection. The court made no ruling as to the element of the balance of the hardships.

In an indirect way, DiPaolo challenges the circuit court's finding that the plaintiff established a clear right in need of protection. DiPaolo suggests that the circuit court's finding that plaintiff had no clear right to the contract was a finding that the plaintiff had not proven the existence of a clearly ascertainable right in need of protection. See *Brando Construction, Inc. v. Department of Transportation*, 139 Ill. App. 3d 798, 803, 487 N.E.2d 1132, 1133 (1985) (citing cases holding that a disappointed bidder does not have a recognizable property interest and lacks standing to challenge the award of the contract, the reviewing court remanded the case to the circuit court for findings of fact to be made as to the plaintiff's standing as an unsuccessful bidder); see also *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287, 295, 395 N.E.2d 1376, 1379 (1979) (the court held that the State's failure to award a contract to the plaintiff was not a denial of due process since the State reserved the right to reject any and all bids, and thus there was no intention to confer a " 'claim of entitlement' " on bidders for government contracts).

We note that *Brando Construction, Inc.* involved the issue of standing to sue, while *Polyvend, Inc.* involved a declaratory judgment rather than a preliminary injunction. However, neither Evanston nor DiPaolo in this case has challenged the plaintiff's standing to bring this suit.

■ Even if we were to agree with DiPaolo that the plaintiff has no

clear right in need of protection because it was an unsuccessful bidder, nonetheless, the plaintiff's right to participate in a fair bidding process, as more fully described later in this opinion, supports the circuit court's finding in this case that the plaintiff had a clear right in need of protection.

However, the circuit court found that the plaintiff had not established the elements of irreparable harm or an inadequate remedy at law. The court found that the plaintiff had not presented a *prima facie* case as to either of those elements. Therefore, pursuant to *Goldstein*, our review of the circuit court's findings as to those elements is *de novo*.

## A. Irreparable Harm

### 1. Waiver

In its second amended complaint, the plaintiff pleaded only that it would be irreparably harmed by the fact that if DiPaolo were to begin work on the project, the plaintiff could not be awarded the contract. Before the circuit court, the plaintiff added the argument that, under section 365.640(d) of the Illinois Administrative Code (the Code) (35 Ill. Adm. Code § 365.640(d) (1996)), it was entitled to injunctive relief without proving irreparable harm. On appeal, the plaintiff raises several other arguments.

■ In its initial appellee's brief in this case, Evanston responded that the plaintiff waived consideration of these additional arguments because the plaintiff failed to plead them in its complaint. See *In re J.B.*, 312 Ill. App. 3d 1140, 1143, 728 N.E.2d 59, 61 (2000) (a party may not succeed on a theory that is not contained in the party's complaint, and any proof that is presented to the court that is not supported by proper pleading is as defective as a claim that is not supported by proof). Moreover, arguments raised for the first time on appeal are waived. *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 324, 696 N.E.2d 804, 810 (1998).

This court is not bound by the principle of waiver and, in the interest of a just result, we elect to address one of these arguments which has merit. See *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 584 N.E.2d 116 (1991).

### 2. Right to Participate in a Fair Bidding Process

The plaintiff contends that it has the right to participate in a fair bidding process and that interference with that right results in an irreparable harm. This precise issue does not appear to have been addressed by the courts in Illinois. However, we find guidance in prior case law.

■ Bids must conform to the advertised requirements of the invitation to bid. *Leo Michuda & Son Co. v. Metropolitan Sanitary District of Greater Chicago*, 97 Ill. App. 3d 340, 344, 422 N.E.2d 1078, 1082 (1981).

The Code required that Evanston award the project pursuant to a competitive bidding process. 35 Ill. Adm. Code § 365.620(b) (1996). The bidding documents were to include "responsibility requirements or criteria which will be employed in evaluating bidders, provided that an experience requirement or performance bond may not be utilized unless adequately justified under the particular circumstances by the [loan] recipient." 35 Ill. Adm. Code § 365.620(b)(1)(E) (1996).

The bids were to be evaluated in accordance with the methods and criteria set forth in the bidding documents. 35 Ill. Adm. Code § 365.620(b)(3)(A) (1996). Finally, unless all bids are rejected, the award "shall be made to the low, responsive, responsible bidder after the bid evaluation has been submitted to the Agency[1] and written notice of Agency approval has been received by the loan recipient." 35 Ill. Adm. Code § 365.620(b)(3)(B) (1996).

■ In *Cardinal Glass Co. v. Board of Education of Mendota Community Consolidated School District No. 289*, 113 Ill. App. 3d 442, 447 N.E.2d 546 (1983), the court held that an unsuccessful bidder for a contract had standing to complain of an alleged statutory violation. While acknowledging that the principal purpose of the statutory provision was the protection of the taxpayers residing in the district, the court pointed out that the measures in the statute also benefitted and protected the bidders themselves. The court then stated as follows:

> "The duty to award the contract to the lowest responsible bidder is owed both to the taxpaying public and to the bidders, who are made an integral part of the statutory scheme. As a practical matter, securing compliance with the statute, and thereby the benefits to taxpayers, will be more effectively handled by unsuccessful bidders, who for the most part have a greater stake in such matters, and greater resources, than an individual taxpayer. In the long run, permitting such suits by bidders will work to advance the public interest behind the statute by securing the goal of tax savings. *** [B]ut, in a broader picture, giving standing to bidders where the statute has been violated will advance the object of the statute." *Cardinal Glass Co.*, 113 Ill. App. 3d at 446-47, 447 N.E.2d at 549.

See also *Stanley Magic-Door, Inc. v. City of Chicago*, 74 Ill. App. 3d 595, 597, 393 N.E.2d 535, 537 (1979) (bidders have an incentive to challenge improper government action as they are the most directly

---

[1]In this case, the Illinois Environmental Protection Agency (IEPA).

affected by it; it cannot be assumed that those charged with the duty will oversee and challenge every improper act of a political or governmental agency).

We acknowledge that none of the above cases are directly on point and can be distinguished. Nonetheless, since, as the court recognized in *Cardinal Glass Co.*, there is a duty owed to a bidder to award the contract to the lowest, responsive, responsible bidder, then as a necessary corollary, a bidder has the right to participate in a fair bidding process.

We now turn to the question of whether denial of the right to participate in a fair bidding process causes irreparable harm. Because no Illinois case provides the definitive answer to our inquiry, we will review the cases from other jurisdictions cited by the parties.

In *United Technologies Communications Co. v. Washington County Board*, 624 F. Supp. 185 (D. Minn. 1985), the district court concluded, on the basis that Minnesota had enacted a detailed code regulating public bidding procedures, that the loss of the chance to participate in a fair bidding process raised a significant threat of irreparable harm to the unsuccessful bidder for which the only true remedy was an injunction. *United Technologies Communications Co.*, 624 F. Supp. at 188.

However, Evanston points to the decision in *Big Country Foods, Inc. v. Board of Education of the Anchorage School District*, 868 F.2d 1085 (9th Cir. 1989). In that case, the plaintiff, an unsuccessful bidder for a contract to supply milk to the defendant's schools, argued that its inability to participate in a fair bidding procedure caused it irreparable injury even in the absence of a showing of lost profits, relying on *United Technologies Communications Co.* Characterizing the holding in that case as a "unique proposition," the court of appeals noted that in *United Technologies Communications Co.*, the district court did not cite any direct authority for that proposition. In any event, the court of appeals refused to consider the argument because it was raised for the first time on appeal. *Big Country Foods, Inc.*, 868 F.2d at 1088. Therefore, since the court of appeals did not consider the merits of the "unique proposition," *Big Country Foods, Inc.* is not authority for the proposition that *United Technologies Communications Co.* was wrongly decided.

Evanston further seeks to distinguish *United Technologies Communications Co.* on the basis that, unlike Washington County in that case, Evanston is a home rule municipality, and therefore, the specific statutory requirements applicable to a county or department of transportation cannot be imposed on it. However, in order to receive the loan in this case, Evanston agreed to be bound by the rules and regulations promulgated by the IEPA in relation to the loans it makes.

See 35 Ill. Adm. Code § 365.110 *et seq*. (1996) (implementing and authorized by sections 19.1 through 19.8 of the Environmental Protection Act (415 ILCS 5/19.1 through 19.8 (West 1996))).

*United Technologies Communications Co.* was followed in *Mathiowetz Construction Co. v. Minnesota Department of Transportation*, 137 F. Supp. 2d 1144 (D. Minn. 2001). In that case, the district court relied on the statement in *United Technologies Communications, Inc.* to the effect that the loss of the chance to participate in a fair bidding process raises a significant threat of irreparable injury for which the only true remedy is injunctive relief. *Mathiowetz Construction Co.*, 137 F. Supp. 2d at 1149. The harm was not dependant upon a showing that Mathiowetz would have been awarded the contract, but in the existence of impropriety in the bidding process. However, the district court denied the request for a temporary restraining order since Mathiowetz had not established at that point that the defendants' improper conduct actually had had an effect on the bidding process. *Mathiowetz Construction Co.*, 137 F. Supp. 2d at 1150-51.[2]

DiPaolo relies on *Advanced Seal Technology, Inc. v. Perry*, 873 F. Supp. 1144 (N.D. Ill. 1995), and *Callahan Paving, Inc. v. City of Chicago*, No. 92 C 2881 (N.D. Ill. 1992). However, in both cases, the courts rejected arguments that lost profits constituted irreparable harm. The courts there did not address the issue of whether the denial of the right to participate in a fair bidding process was irreparable harm.

Moreover in *National Maritime Union of America v. Commander, Military Sealift Command*, 824 F.2d 1228 (D.C. Cir. 1987), the court of appeals recognized that a disappointed bidder who claims an illegality in the procurement process alleges an injury beyond the economic loss of the contract, to wit, its right to a legally valid procurement process. Such a right was implicitly bestowed on all bidders by the mandatory language of the federal procurement statutes *"and by the contractual invitation to bid embodied in the solicitation.* [Citation.]" (Emphasis added.) *National Maritime Union of America*, 824 F.2d at 1237.

None of the above cases are controlling. However, the rationale relied upon by those courts for reaching the conclusion that inability to participate in a fair bidding procedure is sufficient to constitute an irreparable injury is persuasive. As set forth in the above cases, such a

[2]In subsequent proceedings, however, the district court refused to address the state claims (the injunctive relief), deciding the case on the federal issues raised, and indicating that the parties would have to bring the state claims in a new action in state court. *Mathiowetz Construction Co. v. Minnesota Department of Transportation*, C 10—548 (February 27, 2002).

determination is based on the public's interest in maintaining the integrity of the bidding process and the public policy of maintaining a fair and neutral bid-letting process and does not depend on whether the disappointed bidder was entitled to the contract. See *Mathiowetz Construction Co.*, 137 F. Supp. at 1149-50. Here in Illinois, the Code mandates that the award of a project must be made to the low, *responsive*, responsible bidder. 35 Ill. Adm. Code § 365.620(b)(3)(B) (1996). Based upon the record thus far, that did not happen in this case. DiPaolo responds that the circuit court did not determine that its bid was nonresponsive. We disagree.

In finding that the plaintiff had presented a *prima facie* case as to the likelihood of success on the merits, the circuit court determined that DiPaolo had not complied with the requirements for waiving the MBE/WBE 15% utilization goal in that DiPaolo had provided only 14, not the required 15, letters to qualified minority-owned and women-owned businesses. The bid documents in this case specifically provided that the failure to provide sufficient documentation to support the waiver of the MBE/WBE requirement "will cause the bid/proposal to be found *non-responsive by the City and the bid will be rejected.*" (Emphasis added.)

To demonstrate a likelihood of success on the merits, a party need not make out a case that would necessarily require relief at the final hearing. *Williams Brothers Construction Co.*, 243 Ill. App. 3d at 956, 612 N.E.2d at 894. A party need only raise a " 'fair question as to the existence of the rights claimed, [and] lead the court to believe that it will probably be entitled to the relief sought if the proof sustains the allegations.' [Citation.]" *Williams Brothers Construction Co.*, 243 Ill. App. 3d at 956, 612 N.E.2d at 894-95. Here, the circuit court determined that the plaintiff had established a *prima facie* case that DiPaolo's bid did not conform to the bid requirements, and under the specific provisions of the bid documents, DiPaolo's bid was required to be rejected as nonresponsive.

Evanston maintains that accepting the plaintiff's argument that an unfair bidding process automatically imposes irreparable harm on an unsuccessful bidder means that element would be disregarded totally in preliminary injunction cases, contrary to Illinois law. See *Joseph J. Henderson & Son, Inc.*, 318 Ill. App. 3d at 883, 743 N.E.2d at 716; *Williams Brothers Construction Co.*, 243 Ill. App. 3d 949, 612 N.E.2d 890; *Armstrong v. Crystal Lake Park District*, 139 Ill. App. 3d 991, 487 N.E.2d 648 (1985).

We note that in the above cases, the reviewing courts mentioned irreparable harm in reciting the elements necessary for the awarding of a preliminary injunction. The courts upheld the denial of the unsuc-

cessful bidders' motions for preliminary injunctions in each case on the basis that there was no showing of a likelihood of success on the merits and did not address the issue of whether there was irreparable harm.

A plaintiff still must show that the bidding process was unfair in order to establish the need for a preliminary injunction. Here, the plaintiff has set forth a *prima facie* case that Evanston did not award the contract to the lowest, responsive, responsible bidder, based on a finding that DiPaolo did not comply with the MBE/WBE waiver requirements, which failure, under the express terms of the bid documents, makes the bid unresponsive.

In *Funderburg Builders, Inc. v. Abbeville County Memorial Hospital*, 467 F. Supp. 821 (D.S.C. 1979), the plaintiff, the lowest bidder, alleged that the defendant awarded a building contract to the second lowest bidder in violation of the state's competitive bidding statute. Finding that the defendant's rejection of the plaintiff's bid could not be justified and was clearly wrong, the court stated as follows:

> "Injunction and mandamus are the proper remedies to compel compliance with public contract award procedures. [Citations.] In the present case, it is clear that an injunction and declaratory judgment are the only adequate means of protecting the public interest, the integrity of the competitive bidding process, and the rights of the individual bidder. If the Hospital is allowed to proceed with [*sic*] award to other than the lowest responsible, responsive bidder, Funderburg, the public has no legal remedy for the senseless and unlawful waste of public funds. Moreover, if it is learned that Abbeville County is not required to comply with statutory requirements and its own representations that it will award to the lowest responsible bidder, competition for county [*sic*] will no longer receive the benefit of the lowest competitive price." *Funderburg Builders, Inc.*, 467 F. Supp. at 825.

In the present case, the bidding documents emphasized the importance of the MBE/WBE requirement by providing that failure to comply with that requirement rendered a bid nonresponsive. If Evanston is permitted to ignore its own requirements for MBE/WBE participation in its contracts, the MBE/WBE program will cease to have any viability in Evanston's award of contracts. Ignoring the bidding requirements harms the public's interest in maintaining the integrity of the bidding process and the public policy of maintaining a fair and neutral bidding process. Such harm cannot be remedied by the payment of money damages.

In sum, we hold that an unsuccessful bidder may establish the element of irreparable harm by evidence that it was denied the right

to participate in a fair bidding process. However, our holding is limited to those situations, such as the one before us, where the public agency decides to use, or is mandated by law to use, a competitive bidding process. We recognize home rule units ordinarily are not required to engage in competitive bidding. See *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 772 (1994). In this case, since the plaintiff has raised a valid question as to whether the bidding process was fair, we conclude that the plaintiff has established a *prima facie* case as to the element of irreparable harm. Therefore, the circuit court's finding to the contrary is error as a matter of law.

### 2. Inadequate Remedy at Law

The plaintiff contends that the circuit court erred when it determined that the plaintiff had not presented a *prima facie* case that it had no adequate remedy at law. We agree.

 Lost profits are not recoverable by an unsuccessful bidder for a public contract. See *Court Street Steak House, Inc. v. County of Tazewell*, 163 Ill. 2d 159, 169-70, 643 N.E.2d 781, 786 (1994); *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 711 N.E.2d 471 (1999).

Both Evanston and DiPaolo point out that the plaintiff did not introduce any evidence of profits. They argue that the plaintiff cannot complain that the failure to receive lost profits leaves it without an adequate remedy at law unless the plaintiff submits evidence that it indeed lost profits by Evanston's failure to accept its bid. The plaintiff also failed to introduce evidence as to its expenses incurred in preparing and presenting its bid in this case. See *State Mechanical Contractors, Inc. v. Village of Pleasant Hill*, 132 Ill. App. 3d 1027, 1032-33, 477 N.E.2d 509, 513 (1985) (an unsuccessful bidder on a public works project who submitted the most responsive bid had a cause of action to recover from the public body the expenses incurred in preparing and presenting that bid).

DiPaolo also relies on *Advanced Seal Technology, Inc.* In that case, the plaintiff sought a preliminary injunction to require the Secretary of Defense to terminate a contract with the successful bidder and either reconsider previous bids or resolicit bids in accordance with the relevant rules and procedures. In denying the preliminary injunction, the district court determined that the plaintiff's mere allegation of its irreparable loss of business and income did not establish that it did not have an adequate remedy at law. The court noted that other courts had determined that the recovery of bid costs was an adequate remedy at law or had denied injunctive relief where the disappointed bidder

had failed to establish that an award of damages was inadequate or unavailable or had reversed an award of injunctive relief where the public interest demanded it even though the bidder could not be made whole in damages. *Advanced Seal Technology, Inc.*, 873 F. Supp. at 1150. The court then determined that the plaintiff's failure to discuss the adequacy of any remedy at law, together with its unconvincing claim of irreparable harm, namely, that the improper denial of an opportunity to bid on a contract caused an irreparable loss of income and profits, was sufficient grounds upon which to deny injunctive relief. *Advanced Seal Technology, Inc.*, 873 F. Supp. at 1149-50.

We see no purpose in requiring the plaintiff to perform the futile act of proving his lost profits when the law is well settled that he may not recover them. In some cases, it is true that recoupment of bid costs could be an adequate remedy; however, based on the allegations and the evidence so far in this case, such a remedy is not an adequate one here.

The district court in *Funderburg Builders, Inc.* determined that Funderburg had no adequate remedy at law, noted that a disappointed bidder could not recover even his anticipated profits and concluded as follows:

> "It is this clear lack of an adequate legal remedy that will dissuade contractors from competing where competitive bidding procedures are not equitably enforced." *Funderburg Builders, Inc.*, 467 F. Supp. at 825.

Simply recouping the bid costs does not remedy the situation where the bid process is unfair. As we stated earlier, the duty to award a contract to the lowest responsible bidder is owed both to the taxpaying public and to the bidders. *Cardinal Glass Co.*, 113 Ill. App. 3d at 446-47, 447 N.E.2d at 549; see also *Stanley Magic-Door, Inc.*, 74 Ill. App. 3d at 597, 393 N.E.2d at 537 (bidders have incentive to challenge improper government action as they are the most directly affected by it). However, recouping the bid costs does not stop the improper governmental action. The harm to the bidders and the public alike will likely continue unabated unless the governmental body is enjoined from maintaining an unfair bidding process.

We conclude that the plaintiff has established a *prima facie* case that it does not have adequate remedy at law for the denial of its right to participate in a fair bidding process, and therefore, the circuit court's finding to the contrary is error as a matter of law.

### 3. Balance of Hardships to the Parties

The circuit court did not make a finding as to whether the balance of the hardships to the parties supports the grant of preliminary injunctive relief. See *Joseph J. Henderson & Son, Inc.*, 318 Ill. App. 3d

at 883, 743 N.E.2d at 716. However, the record thus far in this case supports tipping the balance of hardships in favor of the plaintiff.

The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits. *Armstrong*, 139 Ill. App. 3d at 996, 487 N.E.2d at 651. In the absence of a preliminary injunction in this case, DiPaolo would begin work on the project despite the fact that the plaintiff has established a *prima facie* case as to Evanston's improper awarding of the contract for the project to DiPaolo. By the time a hearing on the merits could be held, the project would be long since under way, making it impractical to remove DiPaolo from the project. In other words, based upon the record before us, the lack of preliminary injunction operates to deprive the plaintiff of a right to which it has made a *prima facie* case of entitlement.

We conclude that the record presents a *prima facie* case that the plaintiff would suffer the greater hardship if the preliminary injunction was denied and, therefore, a preliminary injunction is necessary in order to preserve the status quo. This determination is based upon the record before us and does not and cannot consider any evidence the defendants may present about the hardship to the citizens of Evanston from the delay in constructing the relief storm sewer project.

## Conclusion

Based upon all of the foregoing, we hold that the plaintiff has established a *prima facie* case as to all of the elements necessary for the issuance of a preliminary injunction. Therefore, we reverse the order of the trial court denying the plaintiff's motion for a preliminary injunction and remand this case to the circuit court for a continuation of the hearing and the presentation of evidence on behalf of Evanston and DiPaolo.

The judgment of the circuit court is reversed and the cause remanded with directions.

Reversed and remanded with directions.

WOLFSON and SOUTH, JJ., concur.